MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2021 ME 26
Docket:      BCD-20-59
Argued:      October 6, 2020
Decided:     April 29, 2021

Panel:       MEAD, GORMAN, JABAR, HUMPHREY, and HORTON, JJ.
Majority:    MEAD, GORMAN, JABAR, and HUMPHREY, JJ.
Dissent:     HORTON, J.

SOMERSET TELEPHONE COMPANY et al.

v.

STATE TAX ASSESSOR

HUMPHREY, J.

[¶1]    Somerset Telephone Company and affiliated corporations (collectively, Somerset)[1] appeal from a judgment entered in the Business and Consumer Docket (*Murphy, J.*) in which the court affirmed the State Tax Assessor's denial of Somerset's request for an income tax refund for the 2013 taxable year.  Somerset argues principally that the trial court should have granted its petition because the Assessor's application of Maine's corporate income tax statutes resulted in an unconstitutional indirect tax on extraterritorial income that was not subject to taxation in Maine.  We affirm the judgment.

---

[1]  *See infra* n.7.  Telephone and Data Systems, Inc., the parent corporation of Somerset Telephone Company, was also listed on the appellants' notice of appeal and was a party to the proceedings in the trial court.

## I. BACKGROUND

A.     Legal Background

[¶2]  A brief review of some of the relevant legal concepts and statutory definitions is helpful in understanding the factual and procedural background in this case.  Beginning broadly, pursuant to the Due Process and Commerce Clauses of the United States Constitution, "[a]s a general principle, a [s]tate may not tax value earned outside its borders."[2]  *ASARCO Inc. v. Idaho State Tax Comm'n*, 458 U.S. 307, 315 (1982); *see* U.S. Const. amend. XIV, § 1; U.S. Const. art. I, § 8, cl. 3; *Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 164 (1983).  State governments *may* constitutionally tax—on an apportioned basis—the income of a business operating in multiple states if the business activity that generated the income is properly characterized as part of a "unitary business."  *Container Corp.*, 463 U.S. at 165-70; *see Exxon Corp. v. Dep't of Revenue*, 447 U.S. 207, 223-24 (1980); *Mobil Oil Corp. v. Comm'r of Taxes*, 445 U.S. 425, 436-39 (1980); *Gannett Co. v. State Tax Assessor*, 2008 ME 171, ¶¶ 11-12, 959 A.2d 741.  Put another way, "[i]f a company is a unitary business,

---

[2] This constitutional limitation "derives from the virtually axiomatic proposition that the exercise of a state's tax power over a taxpayer's activities is justified by the protection, opportunities, and benefits the state confers upon those activities.  If the state lacks a minimum connection or definite link with the taxpayer's activities, and thus with the property, income, or gross receipts related to those activities, it has not given anything for which it can ask return."  1 Jerome R. Hellerstein et al., *State Taxation* § 8.07[1] at 8-72 (3d ed. 2000) (footnote omitted) (quotation marks omitted).

then a [s]tate may apply an apportionment formula to the taxpayer's total income in order to obtain a rough approximation of the corporate income that is reasonably related to the activities conducted within the taxing [s]tate." *Exxon Corp.*, 447 U.S. at 223 (quotation marks omitted); *see Gannett Co.*, 2008 ME 171, ¶¶ 12, 17, 959 A.2d 741; *Irving Pulp & Paper, Ltd. v. State Tax Assessor*, 2005 ME 96, ¶ 6, 879 A.2d 15. "[T]he linchpin of apportionability in the field of state income taxation is the unitary-business principle." *Mobil Oil Corp.*, 445 U.S. at 439.

[¶3]  Like many other states, Maine applies this "unitary business/formula apportionment approach" to quantify unitary business income and identify the portion of that income that is fairly taxable by Maine. *Gannett Co.*, 2008 ME 171, ¶ 12, 959 A.2d 741. "The 'hallmarks' of a unitary business relationship are 'functional integration, centralized management, and economies of scale.'" *Id.* ¶ 13 (quoting *MeadWestvaco Corp. v. Ill. Dep't of Revenue*, 553 U.S. 16, 30 (2008)); *see State Tax Assessor v. Kraft Foods Grp.*, 2020 ME 81, ¶ 42, 235 A.3d 837. Indeed, "unitary business" is defined by Maine statute as "a business activity which is characterized by unity of ownership, functional integration, centralization of management and economies of scale." 36 M.R.S. § 5102(10-A) (2021). The term "unitary group," which is not defined by statute, refers to a group of corporations whose members are engaged

together in a unitary business. *See Fairchild Semiconductor Corp. v. State Tax Assessor*, 1999 ME 170, ¶ 2 & n.4, 740 A.2d 584; *Great N. Nekoosa Corp. v. State Tax Assessor*, 675 A.2d 963, 964 (Me. 1996).

[¶4] Maine's corporate income tax is imposed by a statute that provided, during the years at issue in this case, that "[a] tax is imposed for each taxable year . . . on each taxable corporation and on each group of corporations that derives income from a unitary business carried on by 2 or more members of an affiliated group."[3] 36 M.R.S. § 5200(1) (2011).[4] As we have stated, therefore, "If a group of corporations meets the definition of a unitary business, . . . [it is] taxed as a single business pursuant to Maine law." *Fairchild Semiconductor Corp.*, 1999 ME 170, ¶ 2 n.3, 740 A.2d 584 (quotation marks omitted) (citing 36 M.R.S.A. § 5200 (1990)). For "taxable corporations that derive income from a unitary business carried on by 2 or more members of an affiliated group with business activity that is taxable both within and without [Maine], 'income'

---

[3] An "affiliated group" is "a group of 2 or more corporations in which more than 50% of the voting stock of each member corporation is directly or indirectly owned by a common owner or owners, either corporate or noncorporate, or by one or more of the member corporations." 36 M.R.S. § 5102(1-B) (2021).

[4] Title 36 M.R.S. § 5200(1) has since been amended but not in a way that affects our analysis in this case. *See* P.L. 2017, ch. 474, § E-1 (emergency, effective Sept. 12, 2018) (codified at 36 M.R.S. § 5200(1) (2021)).

means the net income of the entire group." 36 M.R.S. § 5200(4) (2011).[5] "Maine net income," in turn, "means, for any taxable year for any corporate taxpayer, the taxable income of that taxpayer for that taxable year under the laws of the United States as modified by" statutory additions and subtractions and apportionable pursuant to Maine statutes. 36 M.R.S. § 5102(8) (2011);[6] *see also* 36 M.R.S. § 5200(5) (2021). Thus, for purposes of Maine corporate taxation, "net income" is the federal taxable income for the tax year as modified and apportioned pursuant to Maine's statutes. *Id.* §§ 5102(8), 5200(5).

[¶5] One of the statutory modifications that must be made to a unitary group's federal taxable income is a subtraction of any income that Maine cannot constitutionally tax, 36 M.R.S. § 5200-A(2)(F) (2021), which includes "nonunitary" income—income from sources outside the group's unitary business activity, *see, e.g.*, *Gannett Co.*, 2008 ME 171, ¶ 17, 959 A.2d 741. After this and any other modifications to the unitary group's federal taxable income, the statutory apportionment formula is applied to the group's modified federal taxable income to calculate "*Maine* net income," the portion of the group's

---

[5] Title 36 M.R.S. § 5200(4) has since been amended but not in a way that affects our analysis in this case. *See* P.L. 2017, ch. 474, § E-3 (emergency, effective Sept. 12, 2018) (codified at 36 M.R.S. § 5200(4) (2021)).

[6] Title 36 M.R.S. § 5102(8) has since been amended but not in a way that affects our analysis in this case. *See* P.L. 2015, ch. 300, § A-38 (effective Oct. 15, 2015) (codified at 36 M.R.S. § 5102(8) (2021)).

unitary income that is "apportionable to" Maine and subject to Maine corporate income tax. 36 M.R.S. § 5102(8) (emphasis added); *see also id.* § 5200(5).

B.      Facts and Procedural History

[¶6]   The facts that follow are drawn from the parties' stipulations. *See Kraft Foods Grp.*, 2020 ME 81, ¶¶ 2, 13, 235 A.3d 837. Somerset Telephone Company is a small landline telecommunications company located in North Anson. During the 2012 and 2013 tax years, Somerset Telephone Company and about 180 other corporations were members of a unitary group known as the TDS Group. All of the TDS Group's members were engaged together in a unitary business, although only some of them—Somerset, the affiliated taxpayer group at issue here—conducted business activity in Maine.[7] Income earned by the TDS Group's unitary business—unitary income—was generated both within and outside Maine. Some TDS Group members also earned income from sources separate from the unitary business.[8] This nonunitary income was

---

[7] This subset includes Somerset Telephone Company; it does not include Telephone and Data Systems, Inc. The taxpayer entity listed on the Maine tax returns included in the stipulated record is "SOMERSET TELEPHONE CO & AFFIL." The record indicates that more than twenty TDS Group members conducted business activity in Maine during the tax years at issue, 2012 and 2013, and that for those tax years, a single Maine return, including an attached "combined report," was filed on behalf of all of these Maine-nexus TDS Group members. *See* 36 M.R.S. §§ 5220(5), 5244 (2021); 18-125 C.M.R. ch. 810, §§ .02, .05 (effective Sept. 12, 2010). The Assessor does not dispute that all of the Maine-nexus TDS Group members were members of the affiliated group and engaged in the unitary business. *See* 36 M.R.S. § 5220(5).

[8] The parties agree that—unlike in *Fairchild Semiconductor Corp.*—the corporations that earned nonunitary income were members of the TDS Group, the unitary group at issue here. *See Fairchild Semiconductor Corp. v. State Tax Assessor*, 1999 ME 170, ¶¶ 2-3, 740 A.2d 584.

derived entirely from business activities occurring outside Maine and was not subject to Maine taxation.

[¶7] In the 2012 tax year, the TDS Group had no unitary income—its unitary business experienced a loss of approximately $131 million. However, the nonunitary income earned by its members amounted to approximately $149 million. The TDS Group's federal taxable income, which netted the group's unitary loss against its nonunitary income, was therefore a positive number—approximately $18 million. *See* 26 U.S.C.S. § 63(a) (LEXIS through Pub. L. No. 116-282).

[¶8] In October 2013, Somerset, the subset of TDS Group members that conducted business in Maine during 2012 and 2013, filed a 2012 Maine corporate income tax return. The return first listed the TDS Group's federal taxable income of approximately $18 million. Various modifications in the form of additions and subtractions were then applied to that figure pursuant to 36 M.R.S. § 5200-A (2011).[9] One of the modifications—the subtraction of $149 million representing the nonunitary income received by TDS Group members in 2012—was applied pursuant to 36 M.R.S. § 5200-A(2)(F). The modifications

---

[9] Portions of 36 M.R.S. § 5200-A have since been amended but not in ways relevant to the issues in this appeal. *See, e.g.*, P.L. 2019, ch. 659, § I-2 (effective June 16, 2020) (codified at 36 M.R.S. § 5200-A(2)(AA) (2021); P.L. 2019, ch. 527, §§ A-3, A-4 (effective Sept. 19, 2019) (codified at 36 M.R.S. § 5200-A(2)(AA), (FF) (2021)).

resulted in "adjusted federal taxable income" of approximately negative $162 million, and thus Somerset had no Maine corporate income tax liability for the 2012 tax year.

[¶9] Before filing its Maine corporate income tax return for the 2013 tax year, Somerset sought a ruling from Maine Revenue Services permitting it to "carry forward," as a deduction from the TDS Group's 2013 federal taxable income, the $131 million unitary business loss that the TDS Group realized in 2012. Somerset argued that if the TDS Group had hypothetically not received any nonunitary income in 2012, it would have been entitled to take a net operating loss carryforward deduction in 2013,[10] and that disallowing the deduction would therefore increase Somerset's 2013 Maine tax liability due to the TDS Group's receipt of extraterritorial nonunitary income in 2012. Somerset proposed accounting for the 2012 unitary loss by subtracting $131 million from its 2013 federal taxable income for Maine either as a net loss carryforward deduction or as a modification pursuant to 36 M.R.S.

---

[10] The Internal Revenue Code permits deduction of net operating losses as part of the calculation of "taxable income," 26 U.S.C.S. §§ 63(a), 172(a)-(c) (LEXIS through Pub. L. No. 116-259), and defines "net operating loss" as "the excess of the deductions allowed . . . over the gross income," 26 U.S.C.S. § 172(c). "In other words, if, after all allowable deductions are taken in a given tax year, a taxpayer ends up with a negative number, that figure is a 'net operating loss' that can be carried over or back to other tax years and used as a deduction in those other tax years pursuant to section 172 of the Internal Revenue Code." *Fairchild Semiconductor Corp.*, 1999 ME 170, ¶ 1 n.2, 740 A.2d 584.

§ 5200-A(2)(F).  The Assessor, in a nonbinding advisory ruling, rejected both alternatives.  *See* 5 M.R.S. § 9001 (2021).

[¶10]  In compliance with the advisory ruling, Somerset filed its 2013 Maine tax return showing positive Maine taxable income and a state income tax liability.  It later filed an amended 2013 return on which it listed an adjusted federal taxable income that had been reduced by the TDS Group's 2012 $131 million net operating loss, resulting in a decreased (but still positive) Maine taxable income and decreased tax liability.  Somerset requested a partial refund to account for the difference.  The Assessor denied the refund claim and Somerset's subsequent request for reconsideration.

[¶11]  In April 2017, Somerset filed a five-count petition for review and de novo determination in the Superior Court (Kennebec County).[11]  *See* 5 M.R.S. §§ 11001(1), 11002 (2021); 36 M.R.S. § 151(2)(E)-(G) (2021); M.R. Civ. P. 80C. After the matter was transferred to the Business and Consumer Docket, the parties filed exhibits and statements of stipulated facts and, later, a corrected stipulation of certain facts.  Somerset moved for a summary judgment, and the

---

[11]  In Count 1, Somerset alleged that the Assessor's decision ran contrary to the language of Maine's corporate income tax statutes; in Counts 2 and 3, it alleged that the decision resulted in a tax scheme that violated the United States and Maine Constitutions.  Somerset has not invoked the Maine Constitution on appeal.  In Counts 4 and 5, Somerset sought relief in the form of alternative apportionment, *see, e.g.*, *State Tax Assessor v. Kraft Foods Grp., Inc.*, 2020 ME 81, ¶¶ 1 n.2, 14-15, 235 A.3d 837, but on appeal it has not challenged the trial court's judgment in the Assessor's favor on those counts.

Assessor opposed the motion. The trial court held a nontestimonial hearing and issued an order denying Somerset's motion for summary judgment. Based on the parties' agreement that no factual or legal issues remained for adjudication, the court entered a final judgment in the Assessor's favor. Somerset timely appealed from the judgment. *See* 14 M.R.S. § 1851 (2021); M.R. App. P. 2B(c)(1). After oral argument, we requested supplemental memoranda, which the parties supplied.

## II. DISCUSSION

[¶12] Because the trial court's review of the Assessor's decision was de novo, *see* 36 M.R.S. § 151(2)(G), we review the court's interpretation of the applicable statutes and constitutional provisions directly, without deference to the Assessor's legal determinations, *Kraft Foods Grp.*, 2020 ME 81, ¶ 13, 235 A.3d 837. We review questions of constitutional and statutory interpretation de novo. *Goggin v. State Tax Assessor*, 2018 ME 111, ¶ 20, 191 A.3d 341 (constitutional provisions); *Irving Pulp & Paper, Ltd.*, 2005 ME 96, ¶ 8, 879 A.2d 15 (statutes).

[¶13] To address the question at issue on appeal, we review (A) whether the deduction of a hypothetical federal net operating loss is authorized by Maine's statutes and (B) whether the Constitution demands that such a net operating loss be allowed.

A.      Statutory Interpretation

[¶14]  We construe Maine's tax statutes based on their plain language "to effectuate the intent of the Legislature," considering "the language in the context of the whole statutory scheme." *Eagle Rental, Inc. v. State Tax Assessor*, 2013 ME 48, ¶ 11, 65 A.3d 1278 (quotation marks omitted).  As summarized above, Maine uses federal taxable income as a starting point for calculating the income that is taxable in Maine.  *See* 36 M.R.S. §§ 5102(8), 5200(5).  The Legislature did not, by beginning with federal taxable income, adopt and incorporate theoretical federal loss carryover deductions that are at odds with explicit statutory language in Maine establishing a tax based on the federal taxable income of the taxpayer *for a taxable year*.  *See id.* § 5102(8).

[¶15]   Although in federal taxation, "a taxpayer may carry its net operating loss either backward to past tax years or forward to future tax years in order to set off its lean years against its lush years, and to strike something like an average taxable income computed over a period longer than one year," *United Dominion Indus. v. United States*, 532 U.S. 822, 825 (2001) (quotation marks omitted), no such provision was made in the Maine statutes that applied to the tax years at issue here.  In Maine at the relevant time, a corporation was taxed on its "Maine net income," meaning the federal taxable income "*for that taxable year* . . . as modified by section 5200-A and apportionable to this State

under chapter 821 [36 M.R.S. §§ 5210-5212 (2011)[12]]." 36 M.R.S. § 5102(8) (emphasis added); *see also id.* § 5200(5). "To the extent that it derives from a unitary business carried on by 2 or more members of an affiliated group, the Maine net income of a corporation is determined by apportioning that part of the federal taxable income of the entire group that derives from the unitary business." *Id.* § 5102(8).

[¶16] Section 5200-A prescribes several additions and subtractions as modifications to the taxable income of the taxpayer for the tax year. *See* 36 M.R.S. § 5200-A. Pertinent here, any nonunitary income realized during the taxable year is subtracted from the federal taxable income as "[i]ncome this State is prohibited from taxing under the Constitution of Maine or the United States Constitution to the extent that it is included in the taxpayer's federal taxable income." 36 M.R.S. § 5200-A(2)(F). Only limited subtractions related to net operating losses were allowed pursuant to Maine's statute governing modifications, and those subtractions did not apply for purposes of the taxation at issue here. *See, e.g.*, *id.* § 5200-A(1)(H), (2)(H).

[¶17] After the additions and subtractions are made, "[i]n order to determine the portion of a unitary group's income that is properly taxable by

---

[12] These statutes have since been amended or repealed, though the statutes in chapter 821 still require apportionment. *See* P.L. 2019, ch. 401, §§ C-9, C-10 (effective Sept. 19, 2019) (codified at 36 M.R.S. §§ 5210-5211 (2021)).

Maine when the group has non-Maine source income, the Maine Tax Code requires that the apportionment formula be applied to the federal taxable income of the entire unitary group as a single entity." *Fairchild Semiconductor Corp.*, 1999 ME 170, ¶ 10, 740 A.2d 584; *see* 36 M.R.S. § 5211.[13]

[¶18]  Considering these statutes together, although Maine relies on a federal taxable income figure as a starting point for the calculation of the taxable income in Maine for a tax year, Maine's statutes express no purpose or requirement that the Tax Assessor look behind a taxpayer's federal taxable income in *other* tax years to determine whether a carryforward or carryback should be permitted for the tax year in question.  Somerset's argument that Maine is indirectly taxing nonunitary income is based primarily on a United States Supreme Court opinion in which, unlike the circumstances here, the taxpayer challenged a statute affecting a deduction from income received within a tax year.  *Hunt-Wesson, Inc. v. Franchise Tax Bd.*, 528 U.S. 458, 460-63 (2000).  Specifically, the Supreme Court reviewed a California statute that

---

[13]  As the apportionment statute provided, and still provides,

> Any taxpayer, other than a resident individual, estate, or trust, having income from business activity which is taxable both within and without this State, other than the rendering of purely personal services by an individual, shall apportion his net income as provided in this section.  Any taxpayer having income solely from business activity taxable within this State shall apportion his entire net income to this State.

36 M.R.S. § 5211(1) (2011); 36 M.R.S. § 5211(1) (2021).

permitted a deduction of interest expenses from gross income only to the extent that the expenses exceeded the taxpayer's nonunitary income within the tax year. *Id.*

[¶19] In contrast, here the taxpayer is seeking an income modification based on a loss taken on its federal return in another tax year. The group was not eligible for a net operating loss carryforward on its 2013 federal tax return because it had already accounted for the loss in calculating its federal taxable income in 2012. Whether Somerset was eligible for a carryforward in Maine on its 2013 tax return must be determined by the application of Maine statutes governing income modifications and apportionment, *see* 36 M.R.S. §§ 5200-A, 5211, based on the actual figures reported for the year 2013, beginning with the amount of the TDS Group's federal taxable income for that year. To create a hypothetical scenario in which the TDS Group did not have any nonunitary income in 2012 and therefore the amount of the federal taxable income for 2013 would have been different, as Somerset urges us to do so, does not comport with the plain mandates of Maine's statutory scheme.

[¶20] No statute was in place that required or allowed any addition or subtraction of a carryover that *could* have been taken if the unitary group subject to federal taxation had received only unitary income—for instance, if its members had reorganized themselves such that all nonunitary business was

conducted by separate, nonmember entities. When the Maine Legislature has addressed net operating loss carryforwards through the statute governing modifications, it has done so explicitly; for instance, as to the tax years 2009, 2010, and 2011, the Legislature required the amount of the federal loss carryforward to be added to the federal taxable income for purposes of calculating Maine net income for those years. *See* 36 M.R.S. § 5200-A(1)(V). Any losses carried forward to 2009, 2010, or 2011 could then, in certain circumstances, be deducted in Maine beginning in 2012. *See* 36 M.R.S. § 5200-A(2)(H). The Maine statutes governing modification that were in effect for the 2012 and 2013 tax years did not require or permit any addition or subtraction based on the taxpayer's federal taxable income for other taxable years.

[¶21] Although in *Fairchild Semiconductor*, 1999 ME 170, 740 A.2d 584, we interpreted Maine's statutes to require an adjustment to the federal taxable income reported on a return because the federal and Maine unitary groups had different memberships, we clearly distinguished those circumstances from a situation like that which is before us here, where the calculation of the unitary income—not the identity of the unitary group's members—is at issue. *Id.* ¶¶ 11, 15-16. We noted that, although the federal taxable income had to be recalculated for the Maine taxpayer group for the tax year in question, the

taxpayer there did not seek to "manipulate . . . income or losses in a way that would change . . . treatment pursuant to the Internal Revenue Code." *Id.* ¶ 16; *see also id.* ¶¶ 13-16 (distinguishing cases); *cf. Graham v. State Tax Comm'n*, 369 N.Y.S.2d 863 (N.Y. App. Div. 1975) (requiring the state's taxing authority to allow a nonresident individual a deduction for a net operating loss when the federal return *for that year* did not report a loss due entirely to out-of-state income). We emphasized that the Maine taxpayer group in *Fairchild* was not "trying to reconfigure or recalculate its income. Rather the group merely s[ought] treatment as a separate entity" without regard to the income of other corporations with which it was affiliated for federal tax purposes. *Fairchild Semiconductor*, 1999 ME 170, ¶ 15, 740 A.2d 584.

[¶22] We specifically distinguished the facts in *Fairchild Semiconductor* from those in *Tiedemann v. Johnson*, 316 A.2d 359, 360-61 (Me. 1974), where a taxpayer sought to report income in different years at the federal and state levels. We held that Fairchild Semiconductor's situation as a taxpayer was different because it was merely seeking "separate treatment for its unitary group *the one and only time the federal taxable income of the group is calculated.*" *Fairchild Semiconductor*, 1999 ME 170, ¶ 16, 740 A.2d 584 (emphasis added). That is not the case in the matter before us, where the unitary group in essence seeks a recalculation of its *2012* federal taxable

income for purposes of taking a loss in Maine for the *2013* taxable year. Although in *Fairchild Semiconductor*, we applied federal law to determine the federal taxable income of the reconstituted group "for that taxable year," 36 M.R.S. § 5102(8), we did not thereby require a separate application of federal law to every conceivable taxable year in which a loss carryover could have been generated if the group itself had been configured differently so that it had no nonunitary income.[14]

[¶23]   Other states have considered the consequences of federal net operating loss carryovers and held that, *absent a state's statutory authorization*, a loss may not be carried over on a state return to a tax year other than the year for which a loss was actually claimed on a federal tax return.[15]   In New York, the

---

[14] The dissent ignores this distinction and asserts that the existence of a net operating loss in 2012 necessitates a 2013 deduction, even though Maine's statutes did not authorize that deduction for the 2013 tax year. *See* 36 M.R.S. § 5102(8) (2011) (establishing a tax based on the federal taxable income of the taxpayer *for a taxable year*).

[15] To the extent that other state courts have held that the federal methodology was incorporated into state law, those courts were either interpreting statutes that fully incorporated the federal definition of taxable income, *see Sch. St. Assocs. v. District of Columbia*, 764 A.2d 798, 806-08 (D.C. 2001) (en banc); *Cooper Indus. v. Ind. Dep't of State Revenue*, 673 N.E.2d 1209, 1212-14 (Ind. T.C. 1996); interpreting statutes that specifically authorized a deduction even if none was taken on that year's federal return, *see McJunkin Corp. v. W. Va. Dep't of Tax & Revenue*, 457 S.E.2d 123, 126 (W.Va. 1995); construing a statutory amendment that repealed a limitation on carryback deductions, *Revenue Cabinet v. Southwire Co.*, 777 S.W.2d 598, 600 (Ky. Ct. App. 1989); or deferring to the state tax authority's interpretation of the statute as authorized by state law, *see NL Indus. v. N.D. State Tax Comm'r*, 498 N.W.2d 141, 146-47 (N.D. 1993).   Although the dissent posits that *Searle Pharmaceuticals, Inc. v. Department of Revenue*, 512 N.E.2d 1240, 1246-51 (Ill. 1987), is analogous to the matter before us, the court in that case reviewed a state tax statute to determine whether it violated either the Equal Protection Clause or a state constitutional provision regarding tax uniformity, and no such issues have been presented here.

Court of Appeals held that the New York net operating loss deduction taken for purposes of a franchise tax on insurance companies could not "exceed the *amount deducted* on the Federal return for the corresponding year" and concluded that no independent application of the federal *method* of computation was necessary. *Royal Indem. Co. v. Tax Appeals Tribunal*, 549 N.E.2d 1181, 1182 (N.Y. 1989). That court reasoned that a deduction "is a matter of legislative grace" and that the taxpayer had not carried its burden of establishing a right to the deduction based on a statute defining taxable income to begin with the income required to be reported to the United States for a taxable year, with net operating loss deductions not to exceed that amount. *Id.*; *see* N.Y. Tax Law § 1503(a), (b)(4)(B) (Consol. LEXIS through 2021 released Chapters 1-49, 61-68) (defining taxable income based on the amount that "the taxpayer is required to report to the United States treasury department, for the taxable year" and providing that a net operating loss deduction may not exceed the deduction allowable for federal tax purposes); *see also Am. Emps.' Ins. Co. v. State Tax Comm'n*, 494 N.Y.S.2d 513, 514 (N.Y. App. Div. 1985) (holding that a franchise tax statute limiting deductions to losses deducted on federal returns within a taxable year did not allow for a net operating loss deduction to be taken "without having a valid and reciprocal loss claim on [the] Federal income tax return for the same taxable year").

[¶24]   The Supreme Court of Oklahoma similarly held that a statute requiring the determination of Oklahoma taxable income by beginning with *reported* federal taxable income "does not create a deduction based on net operating loss." *Utica Bankshares Corp. v. Okla. Tax Comm'n*, 892 P.2d 979, 982 (Okla. 1994).   The court held that "tax deductions are a matter of legislative grace" and that the statute defining Oklahoma taxable income "does not create a federal [net operating loss] deduction." *Id.* at 983.   As a result, the court affirmed the denial of the taxpayer's claimed deductions to the extent that they exceeded "the amount of federal net operation loss deduction used at the federal level *for the corresponding tax years*." *Id.* (emphasis added). One justice concurred to specifically indicate that "the state deduction 'allowed' is based upon the federal deduction that was 'allowed' by the I.R.S. for use on the return. The state deduction is not based upon a deduction *theoretically* available under federal law but which was not actually used on the federal return." *Id.* at 984 (Summers, J., concurring) (emphasis added).

[¶25]   The Supreme Court of Oklahoma held that because no state statutory provision "specifically adopt[ed] *all* federally allowed deductions," any adjustments to claimed carryover losses pertained only to limit deductions actually reflected in that year's federal return. *Getty Oil Co. v. Okla. Tax Comm'n*, 563 P.2d 627, 630 (Okla. 1977).   "If the Legislature had intended to allow a

carryover deduction in other situations, it could have provided for such an adjustment." *Id.* at 631.

[¶26] That court applied the same reasoning in a case in which the taxpayer's earlier loss was, as here, taken in a federal tax return filed by a federal consolidated group that reported no overall loss for that year. *Postal Fin. Co. v. Okla. Tax Comm'n*, 594 P.2d 1205, 1205-06 (Okla. 1977).[16] The court held that the loss could not be claimed for a different tax year for purposes of state taxation and that "[t]he rationale of *Getty* is not destroyed so as not to be applicable here because of the consolidated return." *Id.*

[¶27] In considering the effect of the previous year's net operating loss on the calculation of taxable income for a taxable year, the Illinois Supreme Court affirmed the denial of a deduction where, due to income reported in a consolidated federal income tax filing, no net operating loss could be claimed on the federal return for that previous year. *Bodine Elec. Co. v. Allphin,* 410 N.E.2d 828, 829-33 (Ill. 1980). "Though a given taxpayer may therefore

---

[16] We did not find this case persuasive for purposes of deciding the issue in *Fairchild Semiconductor* because Oklahoma's statute—unlike Maine's—required that the calculation of that state's taxable income begin with the "reported" income on the federal return. 1999 ME 170, ¶ 17, 740 A.2d 584 (quotation marks omitted). Here, however, the parties do not, as in *Fairchild Semiconductor*, dispute or contest the composition of the group that reported its income and losses on the federal returns in 2013, and we are focused directly on whether a loss must be allowed in a different year for purposes of federal and state taxation. On this issue we find the reasoning in *Postal Finance Co. v. Oklahoma Tax Commission*, 594 P.2d 1205, 1205-06 (Okla. 1977), persuasive despite the differences in the statutory language.

enjoy no tax benefit from a particular loss, we cannot say that the scheme adopted by the General Assembly is an improper exercise of its taxing authority." *Id.* at 833.

[¶28] Maine did not tax 2012 nonunitary income in 2013 but simply denied a deduction in 2013 because Maine's statutes did not provide for one. Because Maine's statutes did not call for the application of a carryforward loss that would only hypothetically have been allowed under federal law, we must next examine the constitutionality of Maine's taxation scheme.

B.     Constitutionality

[¶29] Somerset contends that Maine must consider the extent of unitary income on a timeline broader than a single tax year because the manner in which Maine taxes a unitary business, *see* 36 M.R.S. § 5200(4), can result in the imposition of higher taxes on a taxpayer because it received nonunitary income in another year. Specifically here, it contends that it must be allowed to carry the 2012 net operating loss arising from the unitary business forward into the 2013 Maine tax year because if it had not realized nonunitary business income in 2012, it could have carried forward the net operating loss of the unitary business for purposes of calculating its 2013 federal taxable income—the starting point for determining the income taxable in Maine. Somerset contends

that, by not allowing the loss carryover on its Maine return for 2013, Maine has imposed an unconstitutional indirect tax on nonunitary income from 2012.

[¶30] "A person challenging the constitutionality of a statute bears a heavy burden of proving unconstitutionality, since all acts of the Legislature are presumed constitutional." *Goggin*, 2018 ME 111, ¶ 20, 191 A.3d 341 (alterations omitted) (quotation marks omitted). "To overcome the presumption of constitutionality, the party challenging the statute must demonstrate convincingly that the statute and the Constitution conflict. All reasonable doubts must be resolved in favor of the constitutionality of the statute." *Id.* (alterations omitted) (citation omitted) (quotation marks omitted).

[¶31] "The Commerce Clause and the Due Process Clause impose distinct but parallel limitations on a State's power to tax out-of-state activities. The Due Process Clause demands that there exist some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax, as well as a rational relationship between the tax and the values connected with the taxing State. The Commerce Clause forbids the States to levy taxes that discriminate against interstate commerce or that burden it by subjecting activities to multiple or unfairly apportioned taxation." *MeadWestvaco Corp.*, 553 U.S. at 24 (citations omitted) (quotation marks omitted). Pursuant to the

Due Process and Commerce Clauses of the United States Constitution, *see* U.S. Const. art. I, § 8, cl. 3; U.S. Const. amend. XIV, § 1, Maine "may not, when imposing an income-based tax, tax value earned outside its borders," *Container Corp. of Am.*, 463 U.S. at 164 (quotation marks omitted); *see Irving Pulp & Paper, Ltd.*, 2005 ME 96, ¶ 6, 879 A.2d 15. Although the unitary business principle permits Maine to tax income arising out of certain interstate activities, the state may not tax extraterritorial, nonunitary income. *See Hunt-Wesson, Inc.*, 528 U.S. at 460-61, 464.

[¶32] "The United States Constitution does not, however, require the states to employ any particular method for achieving fair apportionment of income for tax purposes," *Irving Pulp & Paper, Ltd.*, 2005 ME 96, ¶ 6, 879 A.2d 15, and the deduction of a net operating loss through a carryover is obtained "not as of right, but as of grace," *United States v. Olympic Radio & Television, Inc.*, 349 U.S. 232, 235 (1955). Although a state's imposition of a tax is unconstitutional if it impermissibly taxes income "outside its jurisdictional reach," *Hunt-Wesson, Inc.*, 528 U.S. at 468, statutes that make "reasonable efforts properly to allocate . . . between taxable and tax-exempt income" are upheld even if they increase an entity's tax obligation, *id.* at 466. Thus, the

existence of a tax disadvantage to a particular taxpayer does not necessarily establish unconstitutional taxation.[17]

[¶33] When the Supreme Court of the United States held, in *Hunt-Wesson, Inc.*, that California had imposed a tax that discriminated against interstate commerce, it did so because the state had allowed a unitary business to deduct its interest expense only to the extent that, for that taxable year, the amount exceeded "certain out-of-state income arising from unrelated business activity of a discrete business enterprise." 528 U.S. at 460, 466-68. There, the existence of the out-of-state income in that tax year directly and explicitly increased the taxpayer's tax burden for that year. *Id.*

[¶34] Using federal taxable income for a particular tax year as a starting point for calculating taxable income in a state does not, however, violate the Constitution. *See Bodine Elec. Co.*, 410 N.E.2d at 833. And the decision whether to allow a carryover of a net operating loss for purposes of state taxation is a matter for state legislatures. *See Olympic Radio & Television, Inc.*, 349 U.S. at

---

[17] The dissent is narrowly focused on the tax disadvantage, stating that the mere fact of a unitary net operating loss in 2012 made Somerset eligible to take a carryforward deduction in 2013, Dissenting Opinion ¶ 51, regardless of the "taxable income of that taxpayer *for that taxable year*," here 2013, "under the laws of the United States." 36 M.R.S. §§ 5102(8), 5200(5) (2011) (emphasis added). The dissent's interpretation—not the Assessor's position—is in conflict with Maine's statutes. It is undisputed that, due to nonunitary income, TDS Group was *not* eligible for a net operating loss carryforward deduction on its federal return in 2013, and the Constitution does not compel us to create such a deduction for purposes of Maine taxation for that year. *See Hunt-Wesson, Inc. v. Franchise Tax Bd.*, 528 U.S. 458, 466 (2000).

235; *see also B.F. Goodrich Co. v. Dubno*, 490 A.2d 991, 995 (Conn. 1985) ("Although corporations would be further benefited by greater availability of loss carryover deductions, that is a consideration for the legislature, not the courts."); *cf. Boulet v. State Tax Assessor*, 626 A.2d 33, 35 (Me. 1993) ("Tax credits are a matter of legislative grace that can be broadened, constricted or eliminated at any time.").

[¶35] The Constitution does not require a state to compare a group's actual federal taxable income in a tax year with the hypothetical federal taxable income it might have realized in that year if, for instance, the group had, in *another* year, been reconstituted in a way that excluded all nonunitary income. Such a hypothetical group might have behaved differently in the other year— or in the taxable year, for that matter—due to the lack of income- and loss-sharing with a larger group or due to various other business- and tax-related considerations at a state, national, or international level.

[¶36] Although the application of Maine's taxation statutes might preclude a group from taking a deduction or receiving a credit for a previous year's net operating loss, that does not mean that the group is being taxed on nonunitary income during the tax year for which a carryover is denied. *See Hunt-Wesson, Inc.*, 528 U.S. at 466 (upholding state taxation statutes as long as they make a reasonable effort to allocate between taxable and tax-exempt

income). No part of the nonunitary income reported in 2013 has been taxed, and thus there has been no unconstitutional taxation of that nonunitary income. Nor has any 2012 nonunitary income been taxed, given that the State of Maine imposed no tax on Somerset whatsoever in 2012. In short, the Tax Assessor's determination that the unitary business loss in 2012 could not be deducted from the unitary 2013 income does not render any part of the unitary income reported in 2013 *nonunitary* income. Within neither year has there been an unfair apportionment or an unconstitutional taxation of extraterritorial income. *See id.*; *MeadWestvaco Corp.*, 553 U.S. at 24-25. In each year, the application of the Maine statutes reflected a "reasonable effort[] properly to allocate . . . between taxable and tax-exempt income." *Hunt-Wesson, Inc.*, 528 U.S. at 466.

[¶37] In essence, Somerset seeks to create a new deduction in Maine that was not authorized by statute and is not required by the Constitution. Because Maine statutes do not provide for a carryover of the 2012 net operating loss to Maine's 2013 tax year, and because no such carryover is constitutionally required, we affirm the judgment of the Superior Court affirming the decision of the State Tax Assessor.

The entry is:

Judgment affirmed.

HORTON, J., dissenting.

[¶38]  I respectfully dissent.  In *Hunt-Wesson, Inc. v. Franchise Tax Board*, 528 U.S. 458, 460-65 (2000), the United States Supreme Court held that a state cannot limit or deny a tax deduction solely because the taxpayer received income that the state cannot constitutionally tax.  Today our Court holds the opposite.  In *Fairchild Semiconductor Corp. v. State Tax Assessor*, 1999 ME 170, ¶¶ 6-12, 740 A.2d 584, we specifically held that the Assessor could not deny a unitary business group the ability to take a net operating loss deduction as an offset against its Maine taxable income, despite the fact that the unitary business did not—and could not—report a net operating loss in its federal return because its Maine loss was more than offset by nonunitary income not apportionable to Maine.  Today the Court holds the opposite.

[¶39]  In this case, it is undisputed that the sole reason that TDS Group was unable to take a net operating loss carryforward deduction on its 2013 federal return was that in 2012 certain members of the unitary business group received $149 million in nonunitary income that more than offset the group's $131 million unitary net operating loss for that tax year and thereby caused

TDS Group's 2012 federal tax return to reflect net taxable income rather than a net operating loss. As was the case in *Fairchild*, "if the members of the unitary group had calculated their taxable income separately at the federal level, the loss incurred in the [2012] tax year would have been available to the unitary group corporations as [a net operating loss carryforward] deduction in the [2013] tax year," *id.* ¶ 3.

[¶40] The Assessor acknowledges that the nonunitary income must be excluded from TDS Group's 2012 federal taxable income for purposes of calculating Somerset's 2012 Maine corporate income tax obligation but maintains that it cannot be excluded from TDS Group's 2012 federal taxable income for purposes of calculating Somerset's 2013 Maine corporate income tax obligation. In other words, although the Assessor agrees that TDS Group incurred a unitary net operating loss in 2012, it disputes Somerset's claim to a net operating loss deduction against 2013 unitary income based on that same net operating loss. The Court's endorsement of this self-contradictory interpretation is contrary to our own interpretation of the Maine tax code and the United States Constitution.

[¶41] In *Fairchild*, we resolved virtually the same issue as the one presented here in deciding that the calculation of a unitary business group's net operating loss deduction for Maine tax purposes should not include income

earned by corporate affiliates that were not engaged in the unitary business. *Id.* ¶¶ 6-12. The unavoidable corollary is that the calculation of the deduction for Maine purposes must be based only on the taxpayer's unitary income. *See id.* We phrased the issue in *Fairchild* as being

> whether a [net operating loss] carry-back deduction is available to a Maine unitary group *for Maine losses* when determining "Maine net income" . . . despite one not being available at the federal level due to the composition of the group filing a consolidated federal return.

*Id.* ¶ 6 (emphasis added) (quoting 36 M.R.S.A. § 5102(8) (1990)). "Maine net income" was defined as the taxpayer's

> taxable income . . . for that taxable year *under the laws of the United States* . . . [and t]o the extent that it derives from a unitary business . . . [it] shall be determined by apportioning *that part of the federal taxable income* of the entire group *which derives from the unitary business*.

36 M.R.S.A. § 5102(8) (1990) (emphasis added). We described the difference between the taxpayer's position and the Assessor's position as being that "[t]he Assessor argues that the statute requires a reference to the federal tax return, Fairchild to federal law." *Fairchild Semiconductor Corp.*, 1999 ME 170, ¶ 6, 740 A.2d 584.

[¶42] In a striking manifestation of jurisprudential déjà vu, this case presents essentially the same issue and the same difference in perspective between the Assessor and the taxpayer. The Assessor's disallowance of a net

operating loss carryforward deduction for Somerset's 2013 Maine return rests totally on the fact that TDS Group did not—and could not due to its receipt of nonunitary income—report a net operating loss in its 2012 federal return.[18] Somerset contends that, because federal law would entitle TDS Group to take a net operating loss deduction but for the receipt of nontaxable income earned outside the unitary business, our decision in *Fairchild* requires the Assessor to allow the deduction.

[¶43]  Our analysis in *Fairchild* applies so neatly to the facts here that it is worth quoting at length:

> The State Tax Code for the tax year in question defined "Maine net income" for corporate taxpayers as the taxable income of that taxpayer pursuant to the United States Internal Revenue Code.  The Internal Revenue Code in turn defined "taxable income" as gross income minus the deductions allowed pursuant to the [Internal Revenue] Code.  The deduction at issue in this case for net operating losses was allowed by [the Internal Revenue] Code.  We are asked to determine whether the Legislature intended that the income of the Maine unitary group is to be determined by calculating the income of the group separately pursuant to [the Internal Revenue] Code, or whether the Legislature intended to merely adopt the treatment of the unitary group's income as reflected on the federal consolidated return filed by the [fifteen] affiliated corporations.
>
> The plain language of the statute appears clear on this point when [it] is read in its entirety.  We find reflected in that language an intent to determine the Maine "net income" of a unitary group

---

18  To be clear, it is undisputed that Somerset's 2013 Maine tax burden was increased solely because some TDS Group members received nonunitary, nontaxable income in 2012.

separately pursuant to . . . the Internal Revenue Code, as opposed to simply adopting the treatment of the unitary group's income at the federal level which may be the result of the group's membership in a federal consolidated group.

*Id.* ¶¶ 8-9 (quoting 26 U.S.C.S. § 63(a) (LEXIS through Pub. L. No. 116-344); 36 M.R.S.A. § 5102(8) (1990)) (citing 26 U.S.C.S. § 172 (LEXIS through Pub. L. No. 116-344)).[19]

[¶44]  The Maine statute that we found dispositive, 36 M.R.S.A. § 5102(8) (1990), was substantively the same as the one that applies for purposes of the tax years at issue here.  *See* 36 M.R.S. § 5102(8) (2011).  Yet here, rather than separating out the unitary business income for 2012 in determining Somerset's entitlement to a net operating loss deduction for 2013, the Assessor has done exactly what in *Fairchild* we said the Assessor should not do: it has "simply adopt[ed] the treatment of the unitary group's income at the federal level," *Fairchild Semiconductor Corp.*, 1999 ME 170, ¶ 9, 740 A.2d 584.

[¶45]   There are two differences between *Fairchild* and this case, but neither matters.  One difference is that *Fairchild* involved a net operating loss

---

[19]  In holding that section 5102(8) requires a unitary business group's entitlement to a net operating loss deduction to be determined based only on the income of the unitary business, we also explained that net operating loss deductions "counteract the inequity that may result from breaking up taxable activity into relatively short periods of time and taxing a discrete income producing period without regard to a preceding period of loss." *Fairchild Semiconductor Corp. v. State Tax Assessor*, 1999 ME 170, ¶ 12, 740 A.2d 584 (quotation marks omitted); *see* 1 Jerome R. Hellerstein et al., *State Taxation* § 7.16 at 7-120 (3d ed. 2000) ("The [net operating loss] deduction is a response to what can be the harsh results of the annual accounting concept when a taxpayer has gains in some years and losses in others.").

carryback deduction rather than a net operating loss carryforward deduction. *Id.* ¶¶ 1-6. However, both types of net operating loss deductions operate similarly: a net operating loss incurred in one tax year is netted against income in the tax year (or years) in which the deduction is taken. *See* 26 U.S.C.S. § 172(a)-(c). The other difference is that the unitary business group in *Fairchild* was prevented from taking a net operating loss deduction at the federal level because the larger affiliated group that filed a consolidated federal return included nonunitary companies outside the unitary business group. *Fairchild Semiconductor Corp.*, 1999 ME 170, ¶¶ 2-3, 11, 740 A.2d 584. Here, TDS Group's federal filing was by a unitary business group, some members of which received nonunitary income. In both instances, income from outside the unitary business, i.e., income not apportionable to Maine for purposes of determining "Maine net income," was what prevented the unitary business group from taking a federal net operating loss deduction.

[¶46] The issue in *Fairchild* and here is whether the Assessor's determination of a unitary business group's entitlement to a net operating loss deduction must be based exclusively on income earned as a result of the group's unitary business activities, and in *Fairchild* we answered that question in the affirmative. *Id.* ¶¶ 6-12. In this case, the Court answers the same question in the negative.

[¶47]  In upholding the Assessor's interpretation, the Court also departs from the plain constitutional stricture, explained by the United States Supreme Court in *Hunt-Wesson, Inc.*, 528 U.S. at 460-65, that a state taxpayer's receipt of nontaxable income cannot increase, directly or indirectly, the tax due to the state.  In *Hunt-Wesson*, the Court held that California could not limit the amount of an interest expense deduction based on the taxpayer's receipt of nonunitary income.[20]  *Id.*  Nothing in *Hunt-Wesson* suggests that the Supreme Court's holding applies only to interest expense deductions and not to net operating loss deductions.  The Court today emphasizes the point that all deductions are matters of grace, not of right, Court's Opinion ¶¶ 23-24, 32, 34, but that point becomes immaterial once a state has granted the right to a deduction, as the State of Maine did for tax year 2013.[21]  The interest deduction at issue in *Hunt-Wesson* was a matter of grace, but the state still could not constitutionally limit or deny the deduction based on the taxpayer's receipt of income that the

---

[20]  The Court concluded that its prior decisions explaining the constitutional prohibition on state taxation of extraterritorial nonunitary income "ma[de] clear" that the California statute violated the Due Process and Commerce Clauses.  *Hunt-Wesson, Inc. v. Franchise Tax Bd.*, 528 U.S. 458, 463 (2000).  Although the statute did "not directly impose a tax on nonunitary income," it "denie[d] the taxpayer use of a portion of a deduction from unitary income" because the amount of the deduction was limited by the amount of nonunitary income the taxpayer received.  *Id.* at 464-65.

[21]  As the Court notes, Court's Opinion ¶ 20, Maine denied corporate taxpayers a net operating loss carryforward deduction for the 2009, 2010, and 2011 tax years by requiring that the amount of the deduction be added back to federal taxable income in the corporation's Maine income tax returns for those years.  *See* 36 M.R.S. § 5200-A(1)(V) (2011).  There was no such addback provision for the 2012 and 2013 tax years.

state could not constitutionally tax. *Hunt-Wesson, Inc.*, 528 U.S. at 460-65; *see Nat'l Life Ins. Co. v. United States*, 277 U.S. 508, 519 (1928) ("One may not be subjected to greater burdens upon his taxable property solely because he owns some that is free."). The principle expressed in *Hunt-Wesson* is not that the Constitution requires the states to allow any particular deduction; it is that a state cannot constitutionally use the receipt of nontaxable income to limit a deduction to which a taxpayer would otherwise be entitled.[22]  *See Hunt-Wesson, Inc.*, 528 U.S. at 460-65.

[¶48]  The Court's ruling today characterizes the outcome in *Hunt-Wesson* as being based on "the existence of the out-of-state income *in that tax year* [that] directly and explicitly increased the taxpayer's tax burden," Court's Opinion ¶ 33 (emphasis added), yet nothing in *Hunt-Wesson* suggests that the constitutional prohibition against indirect taxation of nontaxable income applies only in the tax year in which the income is received.

---

[22]  According to the Court's broad holding today, there are no circumstances in which "[u]sing federal taxable income for a particular tax year as a starting point for calculating taxable income in a state" can "violate the Constitution." Court's Opinion ¶ 34. To support that proposition, the Court cites only *Bodine Elec. Co. v. Allphin*, 410 N.E.2d 828, 833 (Ill. 1980), a case decided twenty years before *Hunt-Wesson*. The *Bodine* court simply did not analyze the constitutional issue presented here. *Id.* Its bare, unexplained statement that it could not "say that [an Illinois statute was] an improper exercise of [the state's] taxing authority," *id.*, was apparently based only on a prior holding that Illinois did not unconstitutionally *delegate legislative powers* (to the federal government) when it enacted a statute that "adopt[ed], by reference, existing provisions of the [Internal Revenue] Code," *Thorpe v. Mahin*, 250 N.E.2d 633, 640 (Ill. 1969).

[¶49]  Likewise, the Court characterizes our holding in *Fairchild* as involving only one tax year:

> We held that Fairchild Semiconductor's situation as a taxpayer was different because it was merely seeking "separate treatment for its unitary group *the one and only time the federal taxable income of the group is calculated.*"  *Fairchild Semiconductor*, 1999 ME 170, ¶ 16, 740 A.2d 584 (emphasis added).  That is not the case in the matter before us, where the unitary group in essence seeks a recalculation of its *2012* federal taxable income for purposes of taking a loss in Maine for the *2013* taxable year.

Court's Opinion ¶ 22 (emphasis in original).

[¶50]  *Fairchild* cannot thus be distinguished.[23]  In *Fairchild* and this case, (1) both unitary business groups sustained a Maine operating loss in one tax

---

[23]  In lieu of following *Fairchild*, the Court cites cases from other jurisdictions in which courts reached the opposite conclusion to the one we reached in *Fairchild*.  Court's Opinion ¶¶ 23-27, 34; *compare, e.g.*, *Bodine Elec. Co.*, 410 N.E.2d at 829-33 (affirming, based on an interpretation of Illinois's tax statutes, the denial of a net operating loss carryback deduction for a taxpayer whose federal consolidated group reported taxable income even though the taxpayer itself incurred a net operating loss), *and Postal Fin. Co. v. Okla. Tax Comm'n*, 594 P.2d 1205, 1205-07 (Okla. 1977) (examining Oklahoma's statutes), *with Fairchild Semiconductor Corp.*, 1999 ME 170, ¶¶ 3-12, 17, 740 A.2d 584, (*vacating*, based on an interpretation of *Maine's* tax statutes, the denial of a net operating loss carryback deduction in the exact same circumstances, and specifically rejecting the approach taken by the Oklahoma court).

Meanwhile, other cases from outside Maine are consistent with our conclusion in *Fairchild* and with Somerset's position in this case.  *See, e.g.*, *Sch. St. Assocs. v. District of Columbia*, 764 A.2d 798, 804, 806-815 (D.C. 2001) (en banc) (holding that a taxpayer was entitled to a net operating loss carryback deduction on its D.C. return even though it could not claim the deduction on its consolidated federal return); *Revenue Cabinet v. Southwire Co.*, 777 S.W.2d 598, 599-601 (Ky. Ct. App. 1989) (explaining that state taxable income must be based on "a figure representing the loss actually sustained in" the state and deciding that "the Kentucky legislature intended to allow corporations the benefit of income averaging for state tax purposes" because it declined to add back federal net operating loss deduction amounts (quotation marks omitted)); *Searle Pharms., Inc. v. Dep't of Revenue*, 512 N.E.2d 1240, 1246-51 (Ill. 1987) (concluding that there was no rational basis for limiting net operating loss carryback deductions for members of affiliated groups that filed consolidated federal returns but not those that filed separate returns); *Graham v. State Tax Comm'n*, 369 N.Y.S.2d 863, 863-65 (N.Y. App. Div. 1975) (vacating, on constitutional grounds, the denial of net

year that was more than offset by nonunitary income; (2) both unitary business groups sought to take a net operating loss deduction in their state tax returns in a different tax year; (3) both unitary business groups could have taken a federal net operating loss deduction in those other tax years had they reported their unitary business income separately on their federal returns; and (4) the Assessor disallowed the net operating loss deduction solely because the loss had not been reflected in the group's federal return.[24]  *See Fairchild Semiconductor Corp.*, 1999 ME 170, ¶¶ 3-4, 740 A.2d 584.

[¶51]  In a similar vein, the Court concludes that "[t]he [TDS] group was not eligible for a net operating loss carryforward on its 2013 federal tax return because it had *already accounted for the loss* in calculating its federal taxable

---

operating loss carryback and carryforward deductions for a taxpayer who incurred an in-state loss but reported taxable income on his federal return, which incorporated both in-state and out-of-state income).

[24] We summarized the factual background in *Fairchild* as follows:

> In the 1988 tax year, after adjustments that are not at issue in this case, Fairchild's unitary group had positive income totaling approximately $21 million. The following year, the unitary group sustained losses totaling approximately $115 million. Because the unitary group filed a consolidated return at the federal level, however, these losses were more than offset by the income of the other members of the consolidated group. As a result, no [net operating loss] carry-back deduction was available to the consolidated group at the federal level. However, if the members of the unitary group had calculated their taxable income separately at the federal level, the loss incurred in the 1989 tax year would have been available to the unitary group corporations as [a net operating loss] carry-back deduction in the 1988 tax year pursuant to [the Internal Revenue Code].

*Fairchild Semiconductor Corp.*, 1999 ME 170, ¶ 3, 740 A.2d 584.

income in 2012." Court's Opinion ¶ 19 (emphasis added). But the fact that the loss was accounted for in TDS Group's taxable income for 2012 did not render Somerset ineligible to take the net operating loss carryforward deduction in 2013. In fact, the exact opposite is true: it is because TDS Group incurred a unitary net operating loss in 2012 that Somerset became eligible to take a net operating loss carryforward deduction against unitary income in 2013. The fact that it is the loss that gives rise to the deduction is why the Assessor's position of acknowledging the loss but denying the resulting deduction is self-contradictory.

[¶52] The significance of our ruling in *Fairchild* and the Supreme Court's ruling in *Hunt-Wesson* is that nontaxable income must be excluded entirely and for all purposes—not partially, not for some purposes, and not only in one tax year—from the calculation of the taxpayer's Maine tax liability. Because the Assessor's determination of Somerset's entitlement to a net operating loss deduction fails to exclude nontaxable income from outside the unitary business, I would vacate the judgment and remand for entry of a judgment in favor of Somerset in the amount of the requested refund.

Jonathan A. Block, Esq., and Olga J. Goldberg, Esq. (orally), Pierce Atwood LLP, Portland, for appellants Somerset Telephone Co., et al

Aaron M. Frey, Attorney General, and Kimberly L. Patwardhan, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State Tax Assessor

Business and Consumer Court Docket docket number AP-2017-4
FOR CLERK REFERENCE ONLY