FILED

09/05/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0570

DA 21-0570

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2023 MT 168

FRANKLIN S. & JANET L. TIEGS (PTE)
BAKER PRODUCE, INC.,

      Petitioners and Appellees,

  v.

STATE OF MONTANA,
DEPARTMENT OF REVENUE,

      Respondent and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDV-2021-70
Honorable Michael F. McMahon, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Katherine E. Talley, Matthew T. Cochenour, Montana Department of
Revenue, Helena, Montana

      For Appellees:

            Sean Morrison, Morrison Law Firm, PLLC, Helena, Montana

                Submitted on Briefs:  July 27, 2022

                        Decided:  September 5, 2023

Filed:

                    _____
                            Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 The Department of Revenue (Department) appeals from the Order on Judicial Review entered by the First Judicial District Court, which reversed the determination of the Montana Tax Appeal Board (MTAB) upholding the Department's decision to deny nonresident taxpayers Franklin S. and Janet L. Tiegs a carryover net operating loss (NOL) deduction on their 2014 and 2015 Montana income tax returns, concluding § 15-30-2119, MCA, was unconstitutional because it authorized taxation of non-Montana income. We reverse, and state the issues as follows:

1. *Did the District Court err by holding that the general use of out-of-state income within the Montana income tax framework violated § 15-30-2102, MCA, and federal constitutional principles?*

2. *Did the District Court err by holding that § 15-30-2119, MCA, the NOL statute, constitutes impermissible taxation of income outside of Montana's jurisdictional reach?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2 Franklin and Janet Tiegs (Tiegs) are nonresidents. Franklin Tiegs owns two businesses, Baker Produce, Inc. (Baker), and Jore Corporation (Jore), and he is the sole shareholder of both. Baker is a Washington corporation that processes, packages, and markets produce, and operates an orchard business. Jore is a Delaware corporation that has its principal place of business in Ronan, Montana, and designs and manufactures power tool accessories and hand tools. Both are treated, by election, as individual small businesses or "S." corporations pursuant to I.R.C. § 1361 and §§ 15-30-3301, et seq., MCA,

2

and therefore the income and losses from both businesses pass through to Franklin and Janet Tiegs and are reported on their individual income tax returns.[1]

---

[1] Section 15-31-101, et seq., MCA, defines the business organizations that are subject to the Montana corporate income tax. While S. corporations come within the definition of business organizations subject to corporate taxation, *see* § 15-30-101(1), MCA, § 15-30-3302(1)(b), MCA, provides that an S. corporation's income or losses may pass through to the entity's shareholders and be taxed under Chapter 30, individual taxation, and thus, "an S. corporation is not subject to the taxes imposed in Title 15, chapter 30 or 31." Instead, "each shareholder of an S. corporation . . . is subject to the taxes provided in *this chapter*, [individual taxation] if an individual, trust, or estate." Section 15-30-3302(2), MCA. (Emphasis added.) A shareholder of an S. corporation is subject to "the taxes provided in Title 15, chapter 31 [corporate taxation], if a C. corporation." Section 15-30-3302(2), MCA. As noted, Franklin Tiegs is an individual shareholder, not a C. corporation, and therefore the Tiegs are subject to taxation for S. corporation pass-through income and losses on their joint return under Title 15, chapter 30, governing individual taxation.

In this regard, we note Tiegs's brief argument that individuals may not constitutionally face harsher taxing requirements than corporations, citing *Comptroller of the Treasury v. Wynne*, 575 U.S. 542, 553-56, 135 S. Ct. 1787 (2015), and thus asserting that S. corporation taxation, specifically, the NOL formula applicable to individuals in pass-through, cannot be stricter than the NOL formula available to C. corporations. However, *Comptroller* does not stand for the broad proposition for which Tiegs offer it. The question presented in *Comptroller* pertained to a Maryland tax statute that provided fewer income tax credits for individuals conducting interstate activity than those conducting only intrastate activity. Wynnes were Maryland residents who owned stock in Maxim Healthcare Services, Inc., an S. Corporation with income from 39 states that passed through to the Wynnes. Under the Maryland statute, individuals with Maryland-only activity could obtain an income tax credit against the two-pronged Maryland taxing scheme, the first prong being the Maryland State tax and the second prong being the Maryland county-specific tax. While the Wynnes' interstate income qualified for an income tax credit against prong one, the Maryland State tax, they were disallowed from a credit against prong two, the Maryland county specific tax, while intrastate income would have qualified under both prongs. The U.S. Supreme Court determined that the tax statute violated the Commerce Clause because it created a disincentive for individuals to conduct interstate activity. *See Comptroller*, 575 U.S. at 565-67. In its Opinion, the Supreme Court considered propositions raised by the Dissent, including one that noted the distinction between taxes on corporations and on individuals. In so doing, the *Comptroller* majority observed that the distinction between individuals and corporations alone would not be the decisive factor of constitutionality. *See Comptroller*, 575 U.S. at 553 ("[I]t is hard to see why the dormant Commerce Clause should treat individuals less favorably than corporations."). While the Court's Opinion could be read as undermining the proposition that the Commerce Clause provides less protection for natural persons than corporations, it did not broadly hold, as Tiegs suggest, that individuals and corporations must be subjected to the same taxing requirements. Therefore, we do not consider the argument further.

¶3    In 2009, Baker purchased business operating equipment from Jore, and then leased the purchased equipment back to Jore. The equipment continued to be sited in Montana. This purchase and leaseback (Jore Lease) effectuated a $16 million investment in Jore's operations and was Baker's only Montana economic activity. Outside of the 2009 Jore Lease, Baker and Jore are not connected other than by their common shareholder. For each year between 2009 and 2013, Jore earned and reported Montana source income from its Montana operations. Also for those years, Baker depreciated the equipment it had purchased as a business expense, and thus reported a Montana source loss from that expense for each individual year. Baker advised the Montana Department of Revenue that leasing the equipment to Jore was an activity unrelated to and not within Baker's "normal course of business." From 2009-2013, Baker's Montana source losses generated by the depreciation of the equipment under the Jore Lease were greater than Jore's Montana source income, and thus, Tiegs's Montana tax returns reported no Montana source income for each individual year in that period, and Tiegs incurred no Montana income tax liability in each of those years.

¶4    In 2014 and 2015—the years of the current dispute—Jore and Baker had Montana source income that was not reduced to zero by Baker's depreciation expense under the Jore Lease, or other deductions, and thus generated potential pass-through income to the Tiegs in those years. However, instead of reporting this as Montana source income on their returns, the Tiegs claimed to "carry forward" raw excess Montana losses incurred for years 2009-2013, or, in other words, losses beyond those they had used to completely offset their

Montana income during those years, and directly applied these losses against their Montana source income for 2014 and 2015, thus lowering their Montana income in these years to zero.  As will be discussed further herein, in taking this claimed deduction and carryover, Tiegs did not utilize the statutory formula governing the deduction and carry-forward of a "net operating loss" that is part of the calculation of taxable income.  Rather, they asserted entitlement to a Montana-specific carryover of raw Montana losses from prior years that would reduce their current year Montana income without regard to the operation of these statutory provisions.[2]

---

[2] Technical issues related to the Tiegs's tax return filings give rise to arguments over several ancillary issues, none of which are determinative of the outcome.  First, no findings were entered in the proceeding, either by MTAB or the District Court, regarding the specific amount of the prior years' excess losses that Tiegs carried forward to reduce their reported 2014 and 2015 income to zero.  MTAB simply found that "nothing was reported" as income on Tiegs's Montana income tax returns for those years because they claimed a carryforward deduction.  For their part, Tiegs's briefing offers simply that "Tiegs' losses from 2009 and 2013 greatly exceeded their Montana source income."  As the parties do not dispute that Tiegs had some amount of *raw* losses during the individual years from 2009-2013 in excess of those which they used to offset their income in those individual years, which they are now attempting to carry forward and apply directly to their 2014 and 2015 Montana income calculation, we conclude determination of the specific amount is unnecessary to resolve the issues raised here.

The manner in which Tiegs's completed their 2009-2013 returns, simply listing their Montana income as zero, prompts the Department's argument faulting the Tiegs for "not report[ing] an NOL on their Montana individual tax returns in any year from 2009-2013."  In other words, the Department asserts Tiegs's annual returns during those years failed to indicate the NOL they claimed to have accumulated and the amount they were carrying forward each year— assuming a proper NOL deduction was available to them under the statutes.  Tiegs respond that the Montana tax return forms did not ask for or provide a space for such calculations or disclosures, but merely provided a line to declare their income amount, which they listed as zero.  We cannot fault Tiegs for failing to provide information on their returns that was not requested by the Department.  The Department's audit of the returns brought the issue to light.

Finally, the Department argues that Tiegs are attempting to improperly "double count" their losses in violation of § 15-30-2104(1)(b), MCA (the nonresident tax statute "does not permit any items of income, gain, *loss*, deduction, expense, or credit to be counted *more than once* in determining the amount of Montana source income").  (Emphasis added.)  This argument can be confusing because, under the factual assumptions discussed above, Tiegs are not attempting to

¶5 The Montana Department of Revenue first confronted this issue in this case during an audit of the Tiegs's 2014 and 2015 Montana income tax returns. The Department disallowed Tiegs's carry-forward of raw losses for those years and determined Tiegs had failed to properly declare their Montana income and pay appropriate taxes. The Department disallowed the Tiegs's claimed deduction because, while Tiegs had properly deducted their Montana losses during individual tax years from 2009 to 2013, they did not qualify under the Montana NOL and nonresident taxation statutes in those years for carryforward of an NOL deduction to succeeding years. The Tiegs challenged the Department's audit determination, and the Department of Revenue Office of Dispute Resolution (ODR) and the Montana Tax Appeal Board (MTAB) affirmed the Department's decision. Tiegs appealed to the District Court, arguing primarily that the Department's disallowance of the NOL under § 15-30-2119, MCA, the Montana NOL statute, was error either because the Department incorrectly interpreted and applied the statute to require consideration of out-of-state income in the NOL calculation or, alternatively, that the statute's consideration of out-of-state income within its formula for determining the NOL deduction was unconstitutional.

---

deduct the same raw losses in more than one year, but only those losses they did not previously use to bring their income to zero during 2009-2013. The Department's double dipping argument is premised upon its position that Tiegs did not qualify for a properly calculated NOL from 2009-2013 that could be carried forward to 2014 and 2015, that the statute does not permit Tiegs to carry forward raw Montana-source losses to obtain a deduction in 2014 and 2015, and thus Tiegs are endeavoring to improperly benefit "twice" from the losses. However, the issue correctly understood is whether Tiegs are entitled to carry forward unused, raw Montana losses to later years, and whether any restriction by the State upon doing so is unconstitutional, not that Tiegs are attempting to deduct the same loss twice.

¶6      The District Court broadly held that the State cannot incorporate out-of-state income within the income tax framework generally, and particularly within the NOL statute, as to do so would permit unconstitutional taxation on income outside of the State's jurisdiction because these statutes "can result in an increased tax liability based solely on the receipt of non-Montana source income." Second, more specifically, the District Court held that the Department's utilization of out-of-state income to calculate a nonresident's Montana NOL carryover deduction under § 15-30-2119, MCA, functioned as a dollar-for-dollar offset of a permissible deduction that was unconstitutional, citing *Hunt-Wesson, Inc. v. Franchise Tax Bd.*, 528 U.S. 458, 120 S. Ct. 1022 (2000), and reasoning, "[t]he effect [here] is no different than a law that says, 'For every $1 dollar of out of state income earned, a taxpayer's Montana taxable income is increased $1.'" Lastly, the District Court reasoned that any constitutional defect within § 15-30-2119, MCA, could be cured administratively by the Department's adoption of limiting regulations. The District Court's reasoning will be further discussed herein.

¶7      On appeal, the Department argues all of the subject statutes constitutionally utilize out-of-state income within formulas that permissibly determine the measure of a nonresident's Montana income tax. The Department argues the District Court erred by holding that § 15-30-2119, MCA, the Montana NOL statute, constitutes an unconstitutional dollar-for-dollar offset of a nonresident's established deduction that must be read to consider only Montana income. Lastly, the Department argues the District Court incorrectly held that any defect within the application of § 15-30-2119, MCA, could be

7

cured by administrative or regulative action. Because we reverse on the first two arguments, it is not necessary to reach the last argument.

## STANDARDS OF REVIEW

¶8 This case involves interpretation of the U.S. Constitution and Montana statutes, therefore, this Court exercises plenary review. *Espinoza v. Mont. Dep't. of Revenue*, 2018 MT 306, ¶ 13, 393 Mont. 446, 458, 435 P.3d 603, 608, *rev'd on other grounds*, 140 S. Ct. 2246 (2020). The District Court's conclusions of law are reviewed for correctness. *PacifiCorp v. State*, 2011 MT 93, ¶ 15, 360 Mont. 259, 262, 253 P.3d 847. The statutes at issue are reviewed deferentially, keeping in accord with this Court's position that "the interpretation by administrative boards over statutes under their respective domains should be given deference." *Mont. Soc'y of Anesthesiologists v. Mont. Bd. of Nursing*, 2007 MT 290, ¶ 37, 339 Mont. 472, 483, 171 P.3d 704.

## DISCUSSION

¶9 As a preliminary matter, we note that Tiegs's arguments on appeal propose a disposition of the case on narrower grounds or reasoning than employed by the District Court, offering that, "Tiegs do not argue it is unconstitutional for Montana to use a nonresident's total income in the nonresident ratio [§ 15-30-2104, MCA, nonresident taxation] or to determine [their] *rate* of tax [§ 15-30-2103, MCA, rate of tax] . . . . The Tiegs's narrow challenge is to the calculation of Montana's NOL deduction under § 15-30-2119, MCA." (Emphasis in original.) In its reply brief, the Department acknowledges Tiegs's position that a nonresident's income is a component of Montana's

income tax framework, and that Montana may constitutionally consider out-of-state income for some purposes therein, but explains that "because the Department is appealing the court's decision, not the Tiegs's arguments . . . [t]he Department needs this Court to correct" the District Court's broader ruling. We agree with the Department and, additionally, observe that understanding the framework of the Montana nonresident income tax, including the operation of the NOL statute therein, is necessary and critical to a determination of constitutionality.

¶10 The U.S. Supreme Court has held that, "[i]t is not to be disputed that, consistently with the Federal Constitution, a State may not tax property beyond its territorial jurisdiction." *Maxwell v. Bugbee*, 250 U.S. 525, 539-40, 40 S. Ct. 2, 23-25, 63 L. Ed. 1124 (1919). In *Okla. Tax Comm'n v. Chickasaw Nation*, 515 U.S. 450, 462-63, 115 S. Ct. 2214, 2222, 132 L. Ed. 2d 400 (1995), the Court stated that a taxing jurisdiction, there the State of Oklahoma, "may tax all the income of its residents, even income earned outside the taxing jurisdiction," but that "[f]or nonresidents, [] jurisdictions generally may tax only income earned within the jurisdiction." *Chickasaw Nation*, 515 U.S. at 462-63, n.11, 115 S. Ct. at 2222. (Emphasis omitted.) However, as the Supreme Court has also explained, a nonresident taxpayer's extra-jurisdictional property can be properly utilized in determining the measure of the assessment of a state tax:

> *When the State levies taxes within its authority, property not in itself taxable by the State may be used as a measure of the tax imposed. . . .* It is only in instances where the State exceeds its authority in imposing a tax upon a subject-matter within its jurisdiction in such a way as to really amount to taxing that which is beyond its authority, that such exercise of power by the State is held void. In cases of that character the attempted taxation must fail.

9

*Maxwell*, 250 U.S. at 539-40, 40 S. Ct. at 24-25. (Emphasis added.) Thus, the question here ultimately will be, does Montana's use of out-of-state income within its income tax framework "really amount to taxing that which is beyond its authority?" *Maxwell*, 250 U.S. at 539-40, 40 S. Ct. at 24-25. We thus turn to Montana's framework, and the District Court's rulings in that regard.[3]

¶11 *1. Did the District Court err by holding that the general use of out-of-state income within the Montana income tax framework violated § 15-30-2102, MCA, and federal constitutional principles?*

¶12 The calculation of a nonresident's Montana income tax is governed by several statutes, is significantly tied in substance and methodology to the calculation of the federal income tax, and is identical in methodology to calculation of a resident's Montana income tax, until the final step in the calculation under § 15-30-2104, MCA. That provision, "Tax on nonresident," incorporates the same determinations of income and deductions applicable to residents, beginning with gross income under § 15-30-2101(10), MCA, and continuing thereafter. Thus, the same income determination process is applicable to all taxpayers, resident and nonresident, and we begin our analysis there.

---

[3] *Maxwell* was a New Jersey estate case involving a challenge to a state inheritance tax statute. The statute "ascertained the entire estate," whether situated in or out of the state, for purposes of assessing the appropriate *rate of tax* applicable to estates of that total size, and then assessed the tax in the proportion that the New Jersey-situated property bore to the entire estate. The U.S. Supreme Court upheld the statute, reasoning that "[t]he transfer of certain property within the State is taxed by a rule which considers the entire estate in arriving at the amount of the tax. It is in no just sense a tax upon the foreign property." *Maxwell*, 250 U.S. at 539, 40 S. Ct. at 24-25.

¶13 Section 15-30-2101(10), MCA, defines "Gross income" as "the taxpayer's gross income for federal income tax purposes as defined in section 61 of the Internal Revenue Code, 26 U.S.C. 61 . . ."[4] Section 15-30-2110(1), MCA, defines "adjusted gross income" as "the taxpayer's federal adjusted gross income as defined in section 62 of the Internal Revenue Code, 26 U.S.C. 62 . . .," as further adjusted by certain state-law income additions and deductions specified in that provision.[5] Correspondingly for nonresidents, § 15-30-2111, MCA, provides that, "[i]n the case of a taxpayer other than a resident of this state, adjusted gross income includes the entire amount of adjusted gross income as provided for in 15-30-2110," and thus, adjusted gross income is determined in the same manner for residents and nonresidents. Then, "Taxable income" means "the adjusted gross income of a taxpayer less deductions and exemptions *provided for in this chapter*," § 15-30-2101(32), MCA (emphasis added), which necessarily, and notably for this case, includes the deduction for NOL, in the manner that deduction is calculated in the chapter, which will be discussed hereinafter. After "taxable income" has been determined, up to seven tax rates are applied against what is referred to as "brackets" or levels of taxable income, again "after making allowance for exemptions and deductions as provided in this

---

[4] We are applying here the language of the versions of the statutes applicable to the years covering the parties' dispute. Notably, subsequent legislation has scheduled revision of all of these statutes, effective January 1, 2024. *See generally* Chap. 503, Laws of Montana 2021.

[5] For example, "[a] taxpayer who, in determining federal adjusted gross income, has reduced the taxpayer's business deductions . . . for which a federal tax credit was elected under the Internal Revenue Code is allowed to deduct the amount of the business expense paid when there is no corresponding state income tax credit or deduction, regardless of the credit taken." Section 15-30-2110(4)(a)(ii), MCA.

chapter." Section 15-30-2103(1), MCA (2013). For example, the statute provides, "on the first $2,300 of taxable income or any part of that income, 1%; on the next $1,800 of taxable income or any part of that income, 2%;" and so on, up to the highest rate of 6.9%.[6] Section 15-30-2103(1)(a-g), MCA (2013). The ensuing product(s) of these individual bracket calculations and their cumulative addition is the amount of a resident taxpayer's Montana income tax. The final step for calculation of a nonresident's Montana income tax is provided by § 15-30-2104, MCA, which states, "[a] tax is imposed upon each nonresident equal to the tax computed under § 15-30-2103 as if the nonresident were a resident during the entire tax year, *multiplied by the ratio of Montana source income to total income from all sources*." Section 15-30-2104, MCA. (Emphasis added.) Thus, the same computation of the nonresident's tax is made under § 15-30-2103, MCA, as for a resident. Then, that amount is multiplied by the ratio of the nonresident's Montana source income to his total income from all sources. Expressed in a formula, the nonresident tax is calculated as follows:

Total taxable income  x  tax rate under 15-30-2103  x  Montana source income
                                                                                Income from all sources

For simple illustration, the Montana income tax for a nonresident with total taxable income from all sources of $100,000, including $20,000 of Montana source income, would be $1,380, calculated as follows: $6,900 [$100,000 x 6.9% under 15-30-2103] times

---

[6] The number of tax rates applied to a particular taxpayer is dependent upon the number of brackets his or her taxable income covers. *See* § 15-30-2103, MCA.

12

$20,000/$100,000 [.2] equals $1,380 [$6,900 x .2]. In contrast, the tax for a resident with $100,000 in all Montana-source income would be $6,900 under § 15-30-2103, MCA. As can be seen, a non-resident's non-Montana income is screened out from taxation by application of the ratio in § 15-30-2104, MCA.

¶14 Consequently, out-of-state income is utilized at multiple points in the determination of a nonresident's Montana income tax, including gross income, which incorporates federal gross income; adjusted gross income, which incorporates federal adjusted gross income before state-law adjustments; Montana taxable income, which is adjusted gross income less state deductions, including the NOL, discussed below, against which the tax rate under § 15-30-2103, MCA, is multiplied; within the calculation of individual deductions; and lastly, within the ratio of Montana source income to total income to proportionalize the Montana income tax to the nonresident's Montana income.

¶15 The utilization of out-of-state income for purposes of the Montana income tax is explicitly authorized and "shall be included and considered" to the extent it is permissible under both the laws and constitutions of Montana and the United States:

> All income except what has been expressly exempted under the provisions of this chapter and income not permitted to be taxed under the constitution of this state or the constitution or laws of the United States shall be included and considered in determining the net income of taxpayers within the provision of this chapter.

Section 15-30-2102, MCA. Noting that, by this provision, Montana has incorporated federal constitutional restraints upon taxation of out-of-state income, the District Court broadly held that out-of-state income "must be excluded from both elements of net income

13

(adjusted gross income and deductions) or the tax will violate Mont. Code. Ann. § 15-30-2102, MCA." (Parenthesis in original.) In this regard, the District Court further reasoned, noting that the definition of "taxable income" under § 15-30-2101(32), MCA, is the adjusted gross income of a taxpayer less deductions and exemptions, that "[t]his calculation makes sense for federal income tax where the federal government exerts almost unlimited taxing authority not only across the country but worldwide. The federal government can consider all sources of income because it has the authority to tax all those sources of income. But Montana is constitutionally restrained from taxing income outside its jurisdiction." Finally, concluding that Montana had not engaged in "reasonable efforts [to] properly allocate [] deduction[s] between taxable and tax-exempt income," citing *Hunt-Wesson*, 528 U.S. at 466, 120 S. Ct. at 1027, the District Court held that the State's use of out-of-state income within the statutory formula for determination of the NOL deduction was also unconstitutional.

¶16    In its challenge to these holdings premised upon the tax statutes, particularly, § 15-30-2102, MCA, the Department has first argued to this Court that the District Court erred in statutory interpretation:

> The [D]istrict [C]ourt's determination that Montana cannot consider out-of-state income when determining a taxpayer's net income is based on its misreading of the statutes governing nonresident taxes. The [D]istrict [C]ourt seized on a general statutory provision that excludes 'income not [constitutionally] permitted to be taxed' from net income to essentially supersede the statutes that govern nonresident income tax. The court's approach abandoned statutory interpretation principles and led it to ignore or omit significant language from these statutes—language that requires the Department to consider non-Montana source income for appropriate limited purposes.

14

¶17 In response to the Department's appellate statutory arguments, the Tiegs have elected not to defend the District Court's broader ruling that implicated the State's general use of out-of-state income within the tax framework. That includes § 15-30-2104, MCA, the nonresident tax statute, which incorporates out-of-state income within a nonresident's taxable income for purposes of the initial calculation step, but then screens that income back out by way of the ratio for purposes of the final calculation of the nonresident's Montana tax. The Department has argued that the District Court's decision would "render [§ 15-30-2104, MCA] inoperable."[7] However, except for the particular issue Tiegs have pursued, there is an essential concession to the Department's statutory arguments. Tiegs also state, as noted above, that they "do not argue it is *unconstitutional* for Montana to use a nonresident's total income" generally within the income tax framework. (Emphasis added.) Rather, Tiegs have explained that their "narrow challenge" is to the constitutionality of Montana's NOL deduction under § 15-30-2119, MCA. For these reasons, and upon the Department's arguments, we reverse the broader ruling of the District Court that appears to prohibit general uses of out-of-state income within the Montana

---

[7] More specifically, the Department's argument is that, "[i]f the carryover of Montana source losses were allowed, as the [D]istrict [C]ourt would have it, but the nonresident tax remained in place, then carryover losses would reduce the numerator, but not the denominator of the ratio. . . . [T]he nonresident ratio would be corrupted, and generally result in nonresidents paying proportionately less than residents, contrary to legislative intent."

15

income tax structure, which uses we have detailed above, and turn to the particular

challenge Tiegs have pursued on appeal.[8]

¶18    *2.  Did the District Court err by holding that § 15-30-2119, MCA, the NOL statute, constitutes impermissible taxation of income outside of Montana's jurisdictional reach?*

¶19    Net operating losses and their carryover are generally explained by a tax treatise as

follows:

> The Internal Revenue Code permits the carryover of net operating losses (NOLs) incurred in one taxable year to offset net income in previous and future years.  The NOL deduction is a response to what can be the harsh results of the annual accounting concept when a taxpayer has gains in some years and losses in others.  The NOL deduction allows a taxpayer with such an uneven pattern of income to bear an equivalent tax burden to the tax burden borne by the taxpayer who earns the same amount of income ratably over the same period.  In effect, the NOL deduction provides a rough form of averaging income across a number of years.

> .    .    .

> Although all states with corporate income taxes currently provide some kind of NOL carryover deduction, there is considerable diversity among the states in their treatment of these deductions.

*Hellerstein, State Taxation: Third Edition*,  Chap. 7.  Corporate Taxes Measured by Net Income:  The Tax Base, ¶ 7.16 Deduction for Net Operating Losses, (2023 Thomson Reuters) (footnotes omitted).

---

[8] The District Court acknowledged, "[i]t is not that Montana must ignore out-of-state income . . . but rather that Montana is precluded from imposing a tax based *only* upon receipt of out-of-state income." (Emphasis in original.)  Having determined that the Montana income tax statutes did so, particularly the NOL statute, it held the State was engaging in "impermissible taxation of income outside its jurisdictional reach and [which] conflicts with the Constitution's Due Process and Commerce Clauses."

¶20   The Department argues the District Court's holding that Montana's NOL statute constitutes an impermissible taxation of out-of-state income was premised, first, upon an incorrect understanding of how the Montana tax framework works, including § 15-30-2119, MCA, the NOL statute.  The Department explains, "[t]o be sure, the nonresident income tax framework clearly incorporates income from all sources, but not for the purpose of taxing it," rather, only as an "initial measure" to determine the tax rate to be applied, after which the ratio "eliminates out of state income from being taxed."  Tiegs answer that "[t]he inclusion of non-Montana source income in the Montana NOL calculation reduces the amount of the deduction and consequently increase[s] the amount of taxable income.  This is an indirect and unconstitutional tax on a nonresident's non-Montana source income," in violation of the U.S. Supreme Court's holding in *Hunt-Wesson*.

¶21   A correct understanding of how the NOL statute works has been a practical and legal issue throughout this litigation.  Prior to the District Court's decision, Tiegs's counsel argued at length to MTAB, after noting that a tax treatise "calls this one of the most complex and difficult issues in the area of state taxation," that Tiegs read Montana's NOL statute to say, "Montana calculates a net operating loss, a separate Montana net operating loss" based only on Montana-source income, such that, "[i]f a taxpayer has a loss in Montana, they are able to carry forward and offset it against a future Montana tax liability."  In other words, Tiegs were then arguing that the Montana NOL statute did *not* incorporate or consider out-of-state income at all, or, at least, that the statute should be interpreted that

17

way. This interpretation reflects what Tiegs attempted to claim on their tax returns. They carried over raw, unused Montana losses from 2009-2013 and deducted them directly from their 2014 and 2015 Montana income amounts, which reduced their Montana income in those years to zero. However, taking that direct deduction was unauthorized—Tiegs failed to follow the formula for calculation and carryover of the NOL deduction under the statute, and thus the Department denied it when conducting the audit.

¶22    Section 15-30-2119, MCA, entitled Net operating loss—computation, provides as follows:

> A Montana net operating loss must be determined in accordance with section 172 of the Internal Revenue Code of 1986 (26 U.S.C. 172) or as that section may be labeled or amended except that the net operating loss determined under section 172(c) of the Internal Revenue Code (26 U.S.C. 172(c)) means taxable income, as defined in 15-30-2101, computed with the modifications specified in section 172(d) of the Internal Revenue Code (26 U.S.C. 172(d)) as they relate to items provided for in this chapter.

¶23    26 U.S.C. § 172, the referenced statute authorizing the federal net operating loss deduction, contains extensive provisions governing the calculation of the amount of net operating losses, the allowable NOL deduction, and the carryover and carryback of that deduction.[9] Notably, a proper NOL *deduction* is determined by applying requisite statutory conditions and restrictions to a net operating *loss*. The federal statute defines "net operating loss" as "the excess of the deductions allowed by this chapter over the *gross income*."

---

[9] Modification of the statute by Congress after the years of this dispute limited the federal NOL deduction to 80 percent of the taxpayer's taxable income for the taxable year, repealing NOL carryback, and expanding NOL carryforward. *Hellerstein, State Taxation: Third Edition*, § 7.16.

26 U.S.C. § 172(c). (Emphasis added.) Thus, a federal net operating loss may be present if the corporation's or individual's permissible deductions for the year are greater than the taxpayer's gross income for the year. Although linked to 26 U.S.C. § 172, § 15-30-2119, MCA, departs from the federal statute's gross income benchmark and instead utilizes "taxable income." As discussed above, Montana's definition of "taxable income" is the taxpayer's federal adjusted gross income, as further adjusted by certain state-law income additions and deductions. This includes out-of-state income and, here, must include Tiegs's out-of-state income. Section 15-30-2119, MCA, further correlates with 26 U.S.C. § 172 by incorporating the federal statute's NOL modifications from subsection (d), "as they relate to items provided for in this chapter." This is Montana's NOL formula. In summary, Montana's NOL carryover deduction constitutes "the excess of the deductions allowed by this chapter" over a taxpayer's taxable income in any given year, subject to restrictions in amount and ability to carry those forward. Clearly, this statute does not permit direct carryover of Montana-only raw unused losses for a deduction from Montana income in future years, without regard to application of statutory parameters for the NOL deduction, including its application within the taxable income of a taxpayer.[10]

---

[10] As stated earlier, all states utilize an NOL deduction, and they do so with varying degrees of connection to the federal NOL deduction. The "science" or analysis of those varying connections is called "conformity," and states are generally categorized as "amount conformity" states, which allow an NOL deduction strictly in the same amount as the federal NOL deduction, "manner conformity" states, which allow an NOL deduction calculated with the same methodology as used by the federal NOL statute, or "hybrid conformity" states, which combine elements of the first two categories. *Hellerstein, State Taxation: Third Edition*, § 7.16. Before MTAB, Tiegs unsuccessfully argued, since abandoned, that Montana was a "manner conformity" state, meaning that while the Montana NOL deduction was calculated using the same manner or methodology as

¶24 Given this understanding of § 15-30-2119, MCA, the Tiegs's argument is now that the inclusion of their out-of-state income within the "taxable income" the State uses to determine an NOL deduction is unconstitutional. Their contention is based heavily on *Hunt-Wesson*, on which the District Court likewise premised its holding. *Hunt-Wesson* involved a challenge to California's taxation of the "unitary" income of a nondomiciliary, or out-of-state, corporation, which did business both inside and outside the State. A state may permissibly tax a proportionate share of a nondomiciliary corporation's unitary income if "there is a 'minimal connection' or 'nexus' between the interstate activities and the taxing State, and 'a rational relationship between the income attributed to the State and the intrastate values of the enterprise.'" *Hunt-Wesson*, 528 U.S. at 464, 120 S. Ct. at 1026 (internal citation omitted). "Unitary income" includes all income from the corporation's business activities related to the business occurring in the taxing state, which excludes "nonunitary income," or the income that "derives from unrelated business activity which constitutes a discrete business enterprise." *Hunt-Wesson*, 528 U.S. at 461, 120 S. Ct. at 1024-25 (internal citation omitted). Without a connection to the state, a state may not constitutionally tax nonunitary income. *Hunt-Wesson*, 528 U.S. at 464, 120 S. Ct. at 1026.

¶25 The provision challenged in the case was California's interest expense deduction. While this deduction was generally available to all taxpayers, California "carve[d] out an exception" and disallowed the deduction in the amount of "nonunitary dividend and

_____

the federal NOL deduction, it included only Montana income. Beyond explaining the workings of the Montana NOL statute, we need not address this issue to resolve the appeal.

20

interest income" the taxpayer had received.  *Hunt-Wesson*, 528 U.S. at 463, 120 S. Ct. at 1026.  Hunt-Wesson, the nondomiciliary corporation taxpayer, had incurred interest expenses during the years in question, but California disallowed the available deduction to the extent Hunt-Wesson had received nonunitary dividend and interest income, or, in other words, dividend and interest income unrelated to Hunt-Wesson's business activities within California, which California could not tax.  *Hunt-Wesson*, 528 U.S. at 464, 120 S. Ct. at 1026.

¶26    The U.S. Supreme Court struck down California's statute, reasoning that while the statute did not "directly impose a tax" on nonunitary income, it nonetheless had imposed an indirect tax on nonunitary income by "den[ying] the taxpayer['s] use of a portion of a deduction from unitary income" based upon the taxpayer's nonunitary income. *Hunt-Wesson*, 528 U.S. at 464, 120 S. Ct. at 1026.  California had done so by "measur[ing] the amount of additional unitary income that becomes subject to its taxation (through reducing the deduction) by *precisely the amount* of nonunitary income that the taxpayer has received . . . [F]or that reason, that which California calls a deduction limitation would seem, in fact, to amount to an impermissible tax." *Hunt-Wesson*, 528 U.S. at 464-65, 120 S. Ct. at 1026.  (Emphasis added.)  (Parenthesis in original.) Consequently, the U.S. Supreme Court concluded the statute "constitutes impermissible taxation of income outside its jurisdictional reach . . . [and] violates the Due Process and Commerce Clauses of the Constitution." *Hunt-Wesson*, 528 U.S. at 468, 120 S. Ct. at 1028.

¶27     We first address the Department's argument that *Hunt-Wesson* is inapplicable because it involved "corporate tax concepts, including unitary business principles . . . [that] do not apply to the individual . . . income tax NOL deduction" at issue here.  While it is correct that *Hunt-Wesson* involved multi-state unitary corporate income and C. corporation taxation that is not at issue here, we see no reason why the federal constitutional principles circumscribing a state's tax jurisdiction do not apply equally to Montana's tax framework for nonresident individuals, here taxed individually through S. corporation elections, and find no basis to reject their application here.  The constitutional principle remains, and cannot be violated by Montana, that a state "may tax all the income of its residents, even income earned outside the taxing jurisdiction," but that "[f]or nonresidents, [] jurisdictions generally may tax only income earned within the jurisdiction."  *Chickasaw Nation*, 515 U.S. at 462-63, n.11, 115 S. Ct. at 2222.  (Emphasis omitted.)  We thus turn to Tiegs's arguments.

¶28     The Tiegs draw parallels between the California statute and the Montana NOL statute, and contend the same result should issue as in *Hunt-Wesson*.  They repeat that the Montana NOL statute works as an "offset," evoking the U.S. Supreme Court's reasoning that the California statute offset an allowable deduction against unitary income by a dollar-for-dollar amount of impermissibly taxed nonunitary income received by the taxpayer, acting as an indirect tax.  Tiegs argue, "[t]hus, like the interest deduction at issue in *Hunt-Wesson*, the Montana NOL deduction is an 'offset deduction' which 'impermissibly tax[es] extra-jurisdictional income.'"  In sum, Tiegs's position is: because

22

the Montana NOL formula utilizes "taxable income," which includes their income from all sources, to determine their eligibility for, and amount of, an NOL deduction, that deduction is reduced or eliminated, thereby increasing their taxable income and indirectly taxing their out-of-state income. However, neither the Tiegs's offered parallels to *Hunt-Wesson* nor their conclusions hold up.

¶29 The challenged statute in *Hunt-Wesson* was a generally available deduction statute from which California had "carve[d] out an exception" and reduced the deduction dollar-for-dollar for the amount of certain kinds of nonunitary income the corporation had received in the tax year. Notably, a California taxpayer with only California-source income would not be affected by the "carve-out," but could claim the full amount of the deduction without offset. The statute had thus resulted in an "impermissible tax," because California had imposed the tax "in such a way as to really amount to taxing that which is beyond its authority," that being indirect taxation of unrelated nonunitary income. *Maxwell*, 250 U.S. at 539-40, 40 S. Ct. at 24-25. Here, however, unlike in *Hunt-Wesson*, there are no "carve-outs," exceptions or distinctions in the Montana NOL statute linked to income that cannot be permissibly taxed. There is no "dollar-for-dollar offset" from a generally permissible deduction for such income. The District Court's concerns that the tax statutes "can result in an increased tax liability *based solely* on the receipt of non-Montana source income" (emphasis added), and that "[t]he effect [here] is *no different than* a law that says, 'For every $1 dollar of out of state income earned, a taxpayer's Montana taxable income is increased $1'" (emphasis added), are incorrect assessments of the effect of the statutes.

23

Rather, for all taxpayers, eligibility for an NOL deduction is based upon their "taxable income," including all of their income—as with every stage of the tax computation framework—which is the uniform measure by which the NOL deduction and eligibility for carryforward are determined. While it is correct that inclusion of Tiegs's out-of-state income within the "taxable income" benchmark used by the NOL statute decreases their eligibility for a Montana NOL deduction and carryforward, that effect does not occur because the statute targets their out-of-state income, but because "taxable income" is the uniform measure for the deduction. That same decrease in eligibility for the NOL deduction occurs to all taxpayers, including residents, based upon their "taxable income." In this regard, the NOL statute is neutral regarding the source and character of income. "Using federal taxable income for a particular tax year as a starting point for calculating taxable income in a state does not . . . violate the Constitution." *Somerset Tel. Co. v. State Tax Assessor*, 259 A.3d 97, 110-11, 2021 ME 26 (2020). Thus, while out-of-state income is incorporated within the formula to determine the NOL deduction, it does not act as a tax on that income, as the statute did in *Hunt-Wesson*. *See Hunt-Wesson*, 528 U.S. at 465, 120 S. Ct. at 1026 ("[T]hat which California calls a deduction limitation would seem, in fact, to amount to an impermissible tax."); *Somerset Tel. Co.*, 259 A.3d 97, 110 (In *Hunt-Wesson*, "the existence of the out-of-state income in that tax year directly and explicitly increased the taxpayer's tax burden for that tax year."). It is certainly within the Legislature's prerogative to set the measure of the income tax by determining the extent to which a deduction is available, if it has done so in a constitutional manner. *Robison v.*

24

*Dept. of Revenue*, 2012 MT 145, ¶ 12, 365 Mont. 336, 340, 281 P.3d 218 ("Tax deductions are a matter of legislative grace.").

¶30   Further, the fact that Tiegs's taxable income includes non-Montana sources does not subject them to improper taxation because, when calculating their tax using the ratio under § 15-30-2104, MCA, their non-Montana source income is screened from taxation, eliminating that income from Montana taxation and avoiding the indirect but impactful taxation that had occurred within the tax year in *Hunt-Wesson*. This is illustrated numerically in the simple example provided in Paragraph 13 of Montana's taxation of a resident and nonresident. Nonresidents pay Montana income taxes based only on their Montana-source income.

¶31   It is a correct observation that out-of-state income has an incremental effect upon the determination of the tax rate under § 15-30-2103, MCA. This may result in nonresidents taxpayers being "lifted" into a higher tax rate assessed against their taxable income, but the Tiegs concede they have "not challenged the use of their total income to determine the rate of tax," because "the [U.S.] Supreme Court has expressly allowed a state to use a nonresident's income to determine the applicable rate," in *Maxwell*. Therefore, the use of out-of-state income by the Montana NOL statute properly operates, in conjunction with the entire framework, "as a measure of the tax imposed." *Maxwell*, 250 U.S. at 539-40, 40 S. Ct. at 24-25; *see also Stevens v. State Tax Assessor*, 571 A.2d 1195 (Maine 1990) ("The Stevenses' contention is that inclusion of their non-Maine source income to determine the *rate* at which their Maine income is to be taxed violates their due

25

process, privileges and immunities, and equal protection rights under the Constitution of the United States. That contention has been squarely addressed and clearly rejected," citing *Maxwell*). (Emphasis in original.)

¶32 We conclude the District Court erred by concluding the NOL statute operates as a dollar-for-dollar offset provision that indirectly taxes out-of-state income. We conclude the NOL statute does not "really amount to taxing that which is beyond its authority," but rather serves a proper purpose within the tax framework of determining the measure of the income tax. *Maxwell*, 250 U.S. at 539-40, 40 S. Ct. at 24-25; *see also Somerset Tel. Co.*, 259 A.3d 97 (rejecting constitutional challenge to denial of a carryforward NOL by unitary income taxpayer).

¶33 The District Court's order is reversed, and the Department's determination is reinstated.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR

26