COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Callins and Senior Judge Clements
Argued by videoconference

COMMONWEALTH OF VIRGINIA,
  DEPARTMENT OF TAXATION

v.      Record No. 0701-23-2

FJ MANAGEMENT, INC., d/b/a
  FJI, INC.

OPINION BY
JUDGE DOMINIQUE A. CALLINS
NOVEMBER 12, 2024

PUBLISHED

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Bradley B. Cavedo, Judge

Stephanie A. Lipinski Galland (Flora T. Hezel, Senior Assistant
Attorney General; Miles & Stockbridge, PC; Office of the Attorney
General, on briefs), for appellant.

Craig D. Bell (Robert W. Loftin; Alec V. Sauble; McGuireWoods
LLP, on brief), for appellee.


The Virginia Department of Taxation (the "Department") appeals the trial court's

judgment finding that the Department overtaxed FJ Management, Inc. ("FJM") in tax years 2013,

2014, and 2015 (the "Tax Years") by requiring FJM to apply the Virginia statutory

apportionment method to FJM's income earned from its minority ownership interest in Pilot

Travel Centers, LLC ("PTC").  The trial court found that FJM did not operate as a unitary

business with PTC, and thus the income FJM earned from PTC could not constitutionally be

apportioned as part of FJM's apportionable income earned from FJM's independent business

operations.  Because the trial court correctly found that FJM and PTC did not form a unitary

business, we hold that the Department's application of the statutory apportionment method to

FJM's income earned from PTC violates the Due Process and Commerce Clauses of the United

States Constitution.  Accordingly, we affirm the trial court's judgment.

BACKGROUND

FJ Management, Inc. is a stock corporation organized in Utah, with its principal place of business in Salt Lake City, Utah. FJM is qualified to do business in Virginia under the name FJI, Inc. Prior to filing for Chapter 11 bankruptcy in 2008, FJM's primary business was the operation of approximately 220 "Flying J" interstate travel centers in the United States and Canada, which provided various services to long-distance truckers. FJM also owned Big West Oil, LLC, which operated an oil refinery in Utah, and Big West Oil of California, LLC, which operated an oil refinery in California. Additionally, FJM owned Longhorn Pipeline Partners, LP, which operated an oil pipeline in Texas, and Transportation Alliance Bank, which provided banking services to truckers.

In 2008, FJM filed for Chapter 11 bankruptcy protection in Delaware due to the 2008 financial crisis. During the bankruptcy process, FJM accepted an offer from Jimmy Haslam of Pilot Corporation to purchase all of FJM's travel centers. This deal was effectuated by a contribution agreement under which FJM transferred its travel centers and other equity interests to Pilot Travel Centers, LLC. In return, FJM received a minority ownership interest in PTC and $1.8 billion to satisfy its creditors. As part of the contribution agreement, FJM also entered into a fuel supply agreement to sell fuel to PTC from Big West Oil, LLC in Utah for a period of twenty years. FJM also disposed of the Longhorn Pipeline Partners, LP and Big West Oil of California, LLC entities. Upon exiting bankruptcy in July 2010, FJM retained only its Big West Oil, LLC oil refinery in Utah, Transportation Alliance Bank, and a minority ownership interest in PTC, and PTC now owned approximately 550 interstate travel centers operating in multiple states, including Virginia.

PTC is a Delaware limited liability company that is taxed as a partnership for income tax purposes and is owned primarily by three entities: Pilot Corporation, Propeller Corp., and FJM.

PTC's ownership structure is bifurcated into Class A and Class B member interests. PTC's Class A interests generally come with the ability to exercise major control over PTC's operations and receive distributions, whereas the Class B interests have the right to receive distributions and have only limited input over PTC's operations. PTC's Class A interests are owned entirely by Pilot Corporation and Propeller Corp., which are two independently operated businesses owned by the Haslam family. Through Pilot Corporation, which is the owner of all Class A-1 units of PTC, and Propeller Corp., which is the owner of all Class A-2 units of PTC, the Haslam family owns over 77.58% of all interests in PTC. FJM's ownership interest in PTC consists entirely of Class B-1 units. During the Tax Years, FJM owned approximately a 17% interest in PTC.

During the Tax Years, PTC was governed under a Fourth Amended and Restated Limited Liability Company Agreement and Fifth Amended and Restated Limited Liability Company Agreement (the "LLC Agreements"). Under the LLC Agreements, PTC is managed by a board of managers consisting of 9 to 11 members, with FJM being able to appoint only two members. The remaining board members are appointed by the Haslam family through Pilot Corporation and Propeller Corp. as Class A unit holders.

FJM timely filed its Virginia corporate income taxes for the Tax Years of 2013, 2014, and 2015. In its original tax returns, FJM reported its distributive share of income earned from PTC as income subject to the Virginia statutory apportionment method and combined PTC's apportionment factors with FJM's apportionment factors to determine FJM's taxable income apportioned to Virginia. In August 2017, FJM filed amended tax returns for the Tax Years, claiming that it had incorrectly reported its income from PTC as apportionable income. In its amended tax returns, FJM removed PTC's apportionment factors from FJM's apportionment factors and treated the PTC income as allocable non-unitary business income of FJM. If accepted by the Department, the amended tax returns would have resulted in a refund of

$162,692 for 2013, a refund of $287,971 for 2014, and additional taxes of $6,776 owed by FJM for 2015.

On November 22, 2017, the Department denied FJM's amended tax returns, concluding that FJM's ownership interest in PTC was not limited enough to permit FJM to remove PTC's apportionment factors from FJM's apportionment factors. FJM filed an appeal under Code § 58.1-1821, requesting administrative review by the Tax Commissioner. As part of its appeal, FJM completed an Allocation of Income Questionnaire sent by the Department for FJM to clarify various aspects of its business relationship with PTC. In a letter dated October 4, 2019, the Tax Commissioner upheld the Department's denial decision, finding that FJM failed to prove that an alternative method of allocation and apportionment was appropriate.

On November 18, 2020, FJM filed an Application for Correction of Erroneous & Otherwise Improper State Tax Assessments with the trial court, asserting that FJM and PTC did not form a unitary business and that the Department's application of the Virginia statutory apportionment method to FJM's income earned from PTC was unconstitutional as applied to FJM. Before trial, FJM and the Department agreed to a comprehensive list of stipulated facts. The trial court held a bench trial on October 25, 2022. During the trial, a Department tax analyst assigned to FJM's case testified on cross-examination that FJM's responses in its Allocation of Income Questionnaire indicated that the three unitary-business factors of functional integration, centralized management, and economies of scale[1] did not exist between FJM and PTC.

On March 28, 2023, the trial court issued a final order in favor of FJM, finding that the Department's denial of FJM's amended tax returns was arbitrary and erroneous and ordering the Department to pay FJM the requested tax refunds, plus interest. In reaching its decision, the trial

---

[1] *See, e.g.*, *MeadWestvaco Corp. v. Ill. Dep't of Revenue*, 553 U.S. 16, 30 (2008) ("[W]e have described the 'hallmarks' of a unitary relationship as functional integration, centralized management, and economies of scale.").

court concluded that the income FJM received from PTC during the Tax Years could not constitutionally be apportioned as part of FJM's apportionable business income because FJM was not operating as a unitary business with PTC—i.e., FJM did not share functional integration, centralized management, or economies of scale with PTC. The Department now appeals the trial court's judgment.

ANALYSIS

I. Unitary-Business Principle

The Department argues that the trial court erred in finding that FJM and PTC did not form a unitary business and that PTC's apportionment factors could not constitutionally be combined with FJM's apportionment factors to calculate FJM's apportionable income for the Tax Years. The question concerning whether the Department's application of the statutory apportionment method violates the United States Constitution is a question of law that we review de novo. *Dulles Duty Free, LLC v. Cnty. of Loudoun*, 294 Va. 9, 13 (2017). However, the trial court's determination that FJM and PTC did not form a unitary business is one of several factual findings that "will not be disturbed on appeal unless they are plainly wrong or without evidence to support them." *Collins v. First Union Nat'l Bank*, 272 Va. 744, 749 (2006).

Generally, "[t]he Due Process and Commerce Clauses [of the United States Constitution] forbid the States to tax 'extraterritorial [income] values'" earned outside of the taxing State. *MeadWestvaco Corp. v. Ill. Dep't of Revenue*, 553 U.S. 16, 19 (2008) (quoting *Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 164 (1983)). "[T]he taxpayer has the "'distinct burden of showing by 'clear and cogent evidence' that [the state tax] results in extraterritorial values being taxed.'"" *Container Corp.*, 463 U.S. at 164 (second alteration in original) (quoting *Exxon Corp. v. Dep't of Revenue of Wis.*, 447 U.S. 207, 221 (1980)). "The Due Process Clause demands that there exist 'some definite link, some minimum connection, between a state and the

person, property or transaction it seeks to tax,' as well as a rational relationship between the tax and the 'values connected with the taxing State.'" *MeadWestvaco Corp.*, 553 U.S. at 24 (quoting *Quill Corp. v. North Dakota*, 504 U.S. 298, 306 (1992), *overruled on other grounds*, 585 U.S. 162 (2018)). "The Commerce Clause forbids the States to levy taxes that discriminate against interstate commerce or that burden it by subjecting activities to multiple or unfairly apportioned taxation." *Id.*

Under the unitary-business principle, "a State need not 'isolate the intrastate income-producing activities from the rest of [a] business' but 'may tax an apportioned sum of the corporation's multistate business if the business is unitary.'" *Id.* at 25 (quoting *Allied-Signal, Inc. v. Dir., Div. of Tax'n*, 504 U.S. 768, 772 (1992)). "A State may . . . tax an apportioned share of the value generated by the intrastate and extrastate activities of a multistate enterprise if those activities form part of a 'unitary business.'" *Id.* at 19 (quoting *Hunt-Wesson, Inc. v. Franchise Tax Bd. of Cal.*, 528 U.S. 458, 460 (2000)). "If a company is a unitary business, then a State may apply an apportionment formula to the taxpayer's total income in order to obtain a 'rough approximation' of the corporate income that is 'reasonably related to the activities conducted within the taxing State.'" *Exxon Corp.*, 447 U.S. at 223 (quoting *Moorman Mfg. Co. v. Bair*, 437 U.S. 267, 273 (1978)). "[T]he 'hallmarks' of a unitary relationship [are] functional integration, centralized management, and economies of scale." *MeadWestvaco Corp.*, 553 U.S. at 30.

In Virginia, "[a]ny corporation having income from business activity which is taxable both within and without the Commonwealth shall allocate and apportion its Virginia taxable income as provided in [Code] §§ 58.1-407 through 58.1-420." Code § 58.1-406. A corporation that is subject to tax in Virginia and at least one other state must allocate and apportion its Virginia taxable income, with dividends being allocated to the corporation's commercial domicile and all other income being apportioned using the Virginia statutory apportionment

method. Code §§ 58.1-406 to -408; 23 Va. Admin. Code § 10-120-140. A corporation's apportionable income in Virginia is calculated using a standard formula involving three apportionment factors: (1) the property factor, (2) the payroll factor, and (3) the sales factor. Code §§ 58.1-408, -409, -412, -414.

Here, FJM argues that the Department, by requiring FJM to combine PTC's apportionment factors with FJM's apportionment factors for the Tax Years, imposed unconstitutional taxation on FJM's income earned from its independent business operations occurring outside of Virginia. In FJM's amended tax returns, FJM's removal of PTC's apportionment factors resulted in significantly reduced property, payroll, and sales factors, thus resulting in less taxation by the Department on FJM's out-of-state business activity.[2] Under the unitary-business principle, the Department would be constitutionally permitted to apply PTC's apportionment factors to FJM's out-of-state business activity only if FJM and PTC formed a unitary business. We hold that the trial court correctly found that FJM and PTC did not form a unitary business, as the evidence sufficiently established that the three unitary-business factors of functional integration, centralized management, and economies of scale did not exist between FJM and PTC. We evaluate each factor in turn.

A. *Functional Integration*

First, the evidence showed that FJM and PTC were not functionally integrated as companies during the Tax Years, but rather were engaged in separate and discrete lines of

---

[2] In FJM's amended tax returns, FJM's property factor reduced from 1.7253% to 0% for 2013, from 1.2210% to 0.0058% for 2014, and from 1.2193% to 0.0031% for 2015. FJM's payroll factor reduced from 1.3194% to 0% for 2013, from 0.7797% to 0% for 2014, and from 0.9373% to 0% for 2015. FJM's sales factor reduced from 2.3495% to 0.0615% for 2013, from 1.9535% to 0.0189% for 2014, and from 2.5095% to 0.0019% for 2015.

businesses.[3]  During the Tax Years, PTC was engaged in operating its 550 interstate travel centers servicing long-distance truckers throughout the United States and Canada, whereas FJM was engaged primarily in operating its Big West Oil, LLC refinery in Utah and Transportation Alliance Bank.  Furthermore, FJM's answers in its Allocation of Income Questionnaire established that, during the Tax Years, FJM and PTC did not share or have in common any business operations or functions, nor did FJM and PTC share or have in common any financial or human resource functions.[4]

To be sure, as part of the original contribution agreement, FJM and PTC entered into a fuel supply agreement, under which FJM sold fuel to PTC from the Big West Oil, LLC refinery during the Tax Years.  However, FJM sold the fuel to PTC according to pricing terms used for all other fuel purchasers from Big West Oil, LLC, based on spot prices set by an independent fuel-pricing service.  The fuel that PTC purchased from FJM during the Tax Years also

---

[3] In a tax context, "functional integration" generally refers to the interconnectedness and interdependence of various business operations and functions between multiple business entities. *Cf. F.W. Woolworth Co. v. Tax'n & Revenue Dep't*, 458 U.S. 354, 365 (1982) (holding that where a subsidiary performed executive and operational functions "autonomously and independently of the parent company," the parent and subsidiary companies were not "functionally integrated").

[4] Specifically, FJM and PTC did not share or have in common any managers; intragroup transfer of personnel or staff; accounting or administrative staff; transportation services or resources; pension or profit-sharing plans; policy or other operating guidelines; ownership in investments; use of trademarks, patents, licenses, manufacturing technology, or research and development; marketing or advertising; computer hardware, electronic-data-processing staff, or software; manufacturing; distribution services and resources; brand names, company names, or trademarks; office space, warehouses, data-processing facilities, machinery, equipment, or transportation facilities; purchasing, selling, marketing, or advertising activities; goals or plans for acquisition, diversification, or extension of their respective businesses; or banking accounts, financing arrangements, or financial advice.  FJM and PTC also did not make or secure any intercompany loans between each other; negotiate terms or provide collateral for any loan obtained by the other; belong to the same collective bargaining unit or union; conduct any joint management or employee-training programs; have any common life, health, annuity, or survivor-benefit programs for employees or management personnel; produce any products that could be utilized in conjunction with one another; or make any royalty payments for patents, trademarks, manufacturing processes, or similar items between each other.

comprised less than 2% of PTC's total fuel purchases and was used at only 15 to 20 of PTC's 550 travel centers.

We conclude that, based on this evidence, the trial court was not plainly wrong in finding that functional integration did not exist between FJM and PTC during the Tax Years.

B. *Centralized Management*

Second, the evidence showed that, during the Tax Years, FJM did not have any significant management authority over PTC, but rather that PTC was effectively controlled and managed by the Haslam family through its ownership of Pilot Corporation and Propeller Corp. During the Tax Years, FJM had an approximately 17% ownership interest in PTC consisting entirely of Class B-1 units, with the ability to appoint only two members of PTC's board of managers. Conversely, the Haslam family, through Pilot Corporation and Propeller Corp., had an approximately 77.58% ownership interest in PTC consisting of all of PTC's Class A units, with the ability to appoint all of the remaining members of the board of managers.

Furthermore, the LLC Agreements are drafted and structured in such a way so that the Class A unit holders—Pilot Corporation and Propeller Corp.—can exercise control over all significant management decisions of PTC. For example, the LLC Agreements require the presence of at least one Pilot Corporation designee and one Propeller Corp. designee for the board to meet or conduct business. The board also cannot remove, appoint, or replace the CEO of PTC without the approval of the majority interest holders, Pilot Corporation and Propeller Corp. Pilot Corporation and Propeller Corp. also have sole veto rights regarding the appointment of executive officers. Pilot Corporation and Propeller Corp. also may call a special meeting of the board at any time, whereas FJM does not satisfy the 25% ownership threshold to call a special meeting. Additionally, under the LLC Agreements, only Pilot Corporation and Propeller Corp., as Class A unit holders, can dissolve and wind up the business affairs of PTC.

We conclude that, based on this evidence, the trial court was not plainly wrong in finding that centralization of management did not exist between FJM and PTC during the Tax Years.

## C. *Economies of Scale*

Finally, the evidence showed that, during the Tax Years, FJM and PTC did not derive any economies of scale—i.e., cost advantages or efficiencies—through their relationship with one another. As explained above, PTC did not receive any special discounts on the fuel that it purchased from FJM under the fuel supply agreement, but rather paid standard spot prices set by an independent fuel-pricing service. Additionally, FJM's answers in its Allocation of Income Questionnaire established that FJM and PTC did not share any business activities or resources that could have potentially enabled FJM and PTC to obtain cost advantages or efficiencies that they wouldn't otherwise have been able to obtain on their own. We conclude that, based on this evidence, the trial court was not plainly wrong in finding that economies of scale did not exist between FJM and PTC during the Tax Years.

\* \* \*

Accordingly, since the evidence sufficiently established that functional integration, centralized management, and economies of scale did not exist between FJM and PTC, the trial court did not err in finding that FJM and PTC did not form a unitary business, and thus did not err in finding that the Department overtaxed FJM for the Tax Years.[5] Since FJM and PTC did not form a unitary business during the Tax Years, we hold that the Department's application of PTC's apportionment factors to FJM's out-of-state business activity under the statutory apportionment method violates the Due Process and Commerce Clauses of the United States Constitution because the apportioned income tax has no "rational relationship between the tax

---

[5] This conclusion comports with the testimony of the Department's tax analyst, who testified that functional integration, centralized management, and economies of scale did not exist between FJM and PTC.

and the 'values connected with the taxing State'" and subjects FJM to "unfairly apportioned taxation." *MeadWestvaco Corp.*, 553 U.S. at 24 (quoting *Quill Corp.*, 504 U.S. at 306).

## II. The Department's Additional Arguments

The Department makes three additional arguments in support of its position that the trial court's judgment should be reversed. We reject each of those arguments in turn.

### A. *Code § 58.1-421*

First, the Department argues that FJM, in seeking tax refunds by filing amended tax returns and subsequently appealing to the Tax Commissioner under Code § 58.1-1821, failed to follow the proper statutory procedure under Code § 58.1-421 to formally request an alternative method of allocation or apportionment.[6] However, the Department did not make this specific argument during the proceedings before the trial court, and thus this issue is not preserved for appellate review. *See* Rule 5A:18. Furthermore, the Department has failed to invoke either exception to Rule 5A:18, "and the Court will not apply the exceptions *sua sponte*." *Hogle v. Commonwealth*, 75 Va. App. 743, 756 (2022); *see Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc). Therefore, we do not reach the Department's argument that FJM failed to follow the proper statutory procedure under Code § 58.1-421.

### B. *Allied-Signal*

Second, the Department argues that, under *Allied-Signal, Inc. v. Director, Division of Taxation*, 504 U.S. 768 (1992), even if FJM and PTC did not share any of the three unitary-business factors of functional integration, centralized management, and economies of scale, the Department could still constitutionally treat FJM and PTC as a unitary business for

---

[6] Under Code § 58.1-421, a corporation that contends that the Department's method of allocation or apportionment subjects the corporation to unfair taxation "shall be entitled to file with the Department a statement of its objections and of such alternative method of allocation or apportionment as it believes to be proper under the circumstances with such detail and proof and within such time as the Department may reasonably prescribe."

- 11 -

tax-apportionment purposes because FJM's ownership interest in PTC was not passive, and FJM took on an operational role in PTC's management. The Department bases its argument on a statement of the United States Supreme Court in *Allied-Signal* that, in determining whether two entities should be treated as a unitary business for tax-apportionment purposes, "the payee and the payor need not be engaged in the same unitary business as a prerequisite to apportionment in all cases" and that "[w]hat is required instead is that [a] capital transaction serve an operational rather than an investment function." *Allied-Signal*, 504 U.S. at 787.

The Department's position reflects a fundamental misunderstanding of *Allied-Signal*'s "operational function" test. In *MeadWestvaco Corp. v. Illinois Department of Revenue*, 553 U.S. 16 (2008), the United States Supreme Court clarified that "[its] references to 'operational function' in *Container Corp.* and *Allied-Signal* were not intended to modify the unitary business principle by adding a new ground for apportionment" and that "[its] decisions in *Container Corp.* and *Allied-Signal* did not announce a new ground for the constitutional apportionment of extrastate values in the absence of a unitary business." *Id.* at 29-30. Rather, "[t]he concept of operational function simply recognizes that an asset can be a part of a taxpayer's unitary business even if what we may term a 'unitary relationship' does not exist between the 'payor and payee.'" *Id.* at 29 (quoting *Allied-Signal*, 504 U.S. at 791-92). Thus, "[i]n the example given in *Allied-Signal*, the taxpayer was not unitary with its banker, but the taxpayer's deposits (which represented working capital and thus operational assets) were clearly unitary with the taxpayer's business." *Id.* Put differently, "the 'payor' was not a unitary part of the taxpayer's business, but the relevant asset was." *Id.*

Under *Allied-Signal*, the question here is not whether FJM took on any non-passive, operational role in PTC's management. Rather, the proper question is whether the income that FJM earned from its minority ownership interest in PTC served an operational function in FJM's

- 12 -

own independent business activities. Here, there is no evidence in the record before this Court on appeal suggesting that FJM used the income it earned from PTC as part of FJM's own working capital or for any other operational purpose related to FJM's independent business activities. Accordingly, reversal of the trial court's judgment under *Allied-Signal* is not warranted in this case.

### C. *Code § 58.1-391(B)*

Finally, the Department asserts that Code § 58.1-391(B) supports the Department's position that FJM's income earned from PTC should be subject to the Virginia statutory apportionment method. Since PTC is a limited liability company that is treated as a partnership for income tax purposes, PTC is a "pass-through entity" and FJM is an "owner" of PTC,[7] subject to the requirements of Code § 58.1-391(B), which provides:

> Each item of pass-through entity income, gain, loss or deduction shall have the same character for an owner under this chapter as for federal income tax purposes. Where an item is not characterized for federal income tax purposes, it shall have the same character for an owner as if realized directly from the source from which realized by the pass-through entity or incurred in the same manner by the pass-through entity.

---

[7] A "pass-through entity" is defined as

> any entity, including a limited partnership, a limited liability partnership, a general partnership, a limited liability company, a professional limited liability company, a business trust, or a Subchapter S corporation, that is recognized as a separate entity for federal income tax purposes, in which the partners, members, or shareholders report their share of the income, gains, losses, deductions, and credits from the entity on their federal income tax returns or make the election and pay the tax levied pursuant to § 58.1-390.3.

Code § 58.1-390.1. An "owner" is defined as "any individual or entity who is treated as a partner, member, or shareholder of a pass-through entity for federal income tax purposes." *Id.*

- 13 -

The Department has interpreted Code § 58.1-391(B) to entail that

> [f]or Virginia income tax purposes, income retains its character as income from the operations of a partnership in computing Virginia taxable income and is properly included in the apportionable income of the partner.  This means that partners are considered to be operating in the business conducted by the partnership.  As such, the Department generally presumes that the income passed through from a partnership to be operational.

P.D. 07-197 (Nov. 30, 2007).  In upholding the Department's initial determination that FJM's income from PTC was properly subject to apportionment, the Tax Commissioner relied on the Department's interpretation of Code § 58.1-391(B) and summarily concluded that

> [i]n this case, [PTC] operates a retail business.  Therefore, the characteristics of the operator of the retail business would flow through to [FJM].  Because [FJM] is considered to be operating a retail business for income tax purposes, [PTC] is considered to be a unitary part of [FJM's] business.

"[I]nterpretation of a tax statute is a question of law reviewed de novo on appeal." *Dep't of Tax'n v. 1887 Holdings, Inc.*, 77 Va. App. 653, 658 (2023).  Although "the Department 'administer[s] and enforce[s] the Commonwealth's tax laws,'" "it is the province of the courts to review an agency's interpretation of a statute de novo."  *Id.* at 663-64 (alterations in original) (quoting *Nielsen Co. (US), LLC v. Cnty. Bd. of Arlington Cnty.*, 289 Va. 79, 88 (2015)).  "[A] regulatory interpretation of a statute 'does not bind a court in deciding [a] statutory issue,'" and "'Virginia courts do not delegate' the responsibility of statutory construction 'to executive agencies.'"  *Id.* at 664 (first quoting *Va. Dep't of Tax'n v. R.J. Reynolds Tobacco Co.*, 300 Va. 446, 455 (2022) (alterations in original); and then quoting *Berglund Chevrolet, Inc. v. Va. Dep't of Motor Vehicles*, 71 Va. App. 747, 752 (2020)).  "'[A]bsent ambiguity' in the statute, 'the plain language controls[,] and the agency's interpretation is afforded no weight beyond that of a typical litigant.'"  *Id.* (alterations in original) (quoting *Nielsen*, 289 Va. at 88).

- 14 -

By its plain language, Code § 58.1-391(B) is concerned solely with the characterization of a pass-through entity's "income, gain, loss or deduction" for the pass-through entity's owners, requiring the character of such income, gain, loss, or deduction to be imputed to the owners for tax purposes. However, the statute's language does not extend so far as to require the business characteristics of the pass-through entity itself to be imputed to its owners, nor does the statute require the owners of the pass-through entity to be treated as conducting the business operations of the pass-through entity as part of a unitary business. In the context of constitutional tax apportionment, these are different analytical matters beyond the mere characterization of income, gain, loss, or deduction that are not directly addressed by Code § 58.1-391(B) and are ultimately beyond the scope of the statute.

By interpreting Code § 58.1-391(B) to treat every owner of a pass-through entity as conducting the pass-through entity's business operations, the Department has essentially created a presumption that every owner of a pass-through entity forms a unitary business with the pass-through entity, even when the actual economic reality is that no such unitary-business relationship exists. Such an approach could circumvent the United States Supreme Court's unitary-business test for constitutional tax apportionment—as demonstrated by the Tax Commissioner's cursory conclusion that "[b]ecause [FJM] is considered to be operating a retail business for income tax purposes, [PTC] is considered to be a unitary part of [FJM's] business." To the contrary, FJM presented sufficient evidence demonstrating that it did not share functional integration, centralized management, or economies of scale with PTC and thus did not form a unitary business with PTC. And it is this evidence—not the Department and Tax Commissioner's artificial presumptions—that carries the day in this case.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*